[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11314

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 19, 2011
JOHN LEY
CLERK

D. C. Docket No. A097-951-388

ISRAEL MEDINA TOVAR,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 19, 2011)

Before DUBINA, Chief Judge, HILL and EBEL,* Circuit Judges.

DUBINA, Chief Judge:

_____

*The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit Court
of Appeals, sitting by designation.

Petitioner Israel Medina Tovar ("Medina") petitions for review of the final order of removal issued by the Board of Immigration Appeals ("BIA"), affirming the Immigration Judge's ("IJ") finding that Medina was removable as charged and denying his applications for adjustment of status and post-order voluntary departure. This case involves Medina's application for adjustment of status to permanent resident under 8 U.S.C. § 1255, in which he asserted his entitlement to classification as a child under the Child Status Protection Act, Pub. L. No. 107–208, § 1, 116 Stat. 927 (2002) ("CSPA"). Under the CSPA, an alien is eligible for an adjustment of status if he is a child "on the date on which an immigrant visa number becomes available for such alien . . . , but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability[.]" 8 U.S.C. § 1153(h)(1)(A). The IJ found that the CSPA did not apply to Medina because he did not timely seek to acquire his lawful permanent residence status. The BIA affirmed, agreeing with the IJ that Medina's request for an immigrant visa with the National Visa Center ("NVC") did not satisfy the "sought to acquire" lawful permanent resident status requirement under the CSPA.

On appeal, Medina requests that we interpret the phrase "sought to acquire" to mean a clear manifestation of a step toward filing the particular application with an agency of the Department of Homeland Security. Under this interpretation, Medina contends that he did maintain his child status, and the BIA erred in denying his application. We agree with Medina that the term "sought to acquire" in the CSPA is broad enough to encompass substantial steps taken toward the filing of the application for permanent residency either with the NVC or with Homeland Security within the one year period, but conclude under the facts of this case, that Medina's actions do not satisfy this broader interpretation. Medina also challenges the BIA's denial of his request for post-order voluntary departure based on his failure to continuously reside in the United States for one year immediately preceding the date he received the NTA. Because we find no ambiguity in the statutory provision in 8 U.S.C. § 1229c(b)(1)(A), we conclude that the BIA correctly denied Medina's request for post-order voluntary departure.

## I. BACKGROUND

A. *Facts*

Medina is a native and citizen of Mexico who was admitted to the United States after inspection on a V-2 non-immigrant visa issued at the U.S. Embassy Ciudad Juarez, Mexico, on June 18, 2002. After his initial admission to the

United States, Medina returned to Mexico twice—once for a three-week stay in February 2004 to attend a Mexican festival, and another time for a three-day stay in June 2004 to visit his mother. He last returned to the United States on June 16, 2004. Thus, the IJ found that Medina last entered the United States without inspection on June 16, 2004.

On January 13, 2005, Medina was personally served with a Notice to Appear ("NTA") in removal proceedings. Medina applied for adjustment of status to permanent resident under 8 U.S.C. § 1255, asserting classification as a child under the CSPA, and applied for post-hearing voluntary departure. In August 2004, Medina's adjustment of status visa number became available. In July 2005, Medina's father received a letter from the NVC acknowledging that it received Medina's earlier request to remove the petition from the termination process and that a petition had been re-entered into the normal NVC process. The letter also stated that the NVC notified an unspecified representative of Medina of the availability of an immigrant visa on an unspecified date and that the NVC received no contact for more than one year after such notification. The next month, Medina's father received another letter from the NVC instructing him regarding further processing of the immigrant visa case. On October 4, 2007, Medina filed

an application for adjustment of status ("I-485"), and he later filed Part I of his immigrant visa application.

B. *Procedural History*

In May 2008, Medina appeared before the IJ and admitted the allegations in the NTA and conceded his removability. As relief from removal, Medina sought adjustment of status as an unmarried child under the age of 21. In opposition, the government filed a motion to pretermit Medina's application for adjustment of status and asserted that Medina failed to maintain his child status because he did not file his I-485 until November 2007, more than three years after visa availability. The government claimed that Medina's correspondence with the NVC was not a sufficient action to satisfy the requirement of having "sought to acquire" legal permanent resident status because he was in removal proceedings during the time he was corresponding with the NVC. The government also asserted that Medina never returned to Mexico to pursue consular processing of his immigrant visa, which his father filed on his behalf.

The IJ found Medina removable as charged. Noting the two requirements necessary to qualify for the benefit of the CSPA—first, that the respondent be under 21 years of age; and second, that the respondent must have "sought to acquire" the status of a lawful alien within one year of a visa number becoming

available—the IJ determined that Medina was 18 years and 10 months old under the CSPA's age calculation formula.[1] Without specifying what the phrase "sought to acquire" includes, the IJ found that under these specific facts, Medina had not sought to acquire legal permanent residence within one year after his visa number became available. First, the IJ noted that Medina did not actually file an I-485 until three years after his visa number became available. Second, the IJ found that the NVC letters do not show Medina's own desire to obtain legal permanent residency; rather, they indicate that Medina's father did not want Medina's eligibility terminated. Third, the IJ commented that Medina had "aged out" when he finally filed his I-485. Thus, the IJ concluded that Medina was not eligible for child classification and could not adjust his status under the CSPA. The IJ also denied Medina's request for post-order voluntary departure.

In affirming the IJ's decision, the BIA concurred in the IJ's conclusion that Medina did not come within the scope of the CSPA because Medina did not apply for a visa within the one-year time period. The BIA noted that the record reflects only that Medina requested, in response to a Consular query to terminate his visa, that such visa not be terminated. The BIA also found that Medina did not timely

---

[1]The IJ calculated the age by taking ten months, the pending time of Medina's immigrant visa, and subtracting it from his age, nineteen (19) years and eight months, which was Medina's age when a visa number became available. *See* 8 U.S.C. § 1153(h)(1)(A), (B).

request adjustment of status because he did not submit his I-485 application until his hearing in 2007, although his visa petition was available in August 2004. In addition, the BIA affirmed the IJ's denial of Medina's request for post-voluntary departure because it found that Medina did not possess one year of continuous presence in the United States preceding the service of the NTA. Accordingly, the BIA dismissed the appeal.

## II.  STANDARD OF REVIEW

Because the BIA adopted and affirmed the IJ's opinion and reasoning, we review both the BIA's and the IJ's decisions. *See Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). We review legal issues *de novo*, giving deference to the BIA's interpretation of the immigration laws and regulations. *See Negusie v. Holder*, 555 U.S. 511, ___, 129 S. Ct. 1159, 1163–64 (2009). We will "defer to the BIA's interpretation if it is reasonable." *Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317, 1320 (11th Cir. 2001). However, we will not defer to the BIA's decision if it does not rely on existing BIA or federal court precedent; rather, we view such decisions as persuasive authority. *Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258–59 (11th Cir. 2008).

## III.  DISCUSSION

A.  *Child Status Protection Act*

The CSPA provides age-out protection for derivative child beneficiaries adversely affected by administrative delays in the adjudication of immigrant petitions. Under the CSPA, an alien is eligible for an adjustment of status if he is a child "on the date on which an immigrant visa number becomes available for such alien . . . , but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability." 8 U.S.C. § 1153(h)(1)(A). The CSPA does not change the INA definition of child–an unmarried son or daughter under the age of 21, *see* 8 U.S.C. § 1101(b)(1)– but instead, establishes a formula for determining age which is not based entirely on chronological calculation. Under this calculation, an alien's age is determined by subtracting the time an applicable petition is pending from the alien's age at the time the alien parent's visa number becomes available. *See* 8 U.S.C. § 1153(h)(1)(A), (B).

There is no dispute that Medina met the age requirement under this provision. The dispute in this case centers on the meaning of the "sought to acquire" provision. Our circuit has not addressed this issue, and the BIA has not

issued a published opinion explaining the requirements under the statutory provision.[2]

In one unpublished decision, the BIA has specifically concluded that Congress's use of the term "sought to acquire" lawful permanent residence is broad enough to include substantial steps taken toward the filing of the relevant application during the relevant time period but which fall short of actual filing of submission to the relevant agency. *See In re Jose Jesus Murillo*, No. A099 252 007, 2010 WL 5888675 (BIA Oct. 6, 2010). The BIA distinguished Congress's use of the term "sought to acquire" from its use of "file," "submit," or "apply" within various sections of the Immigration and Nationality Act. Looking at the plain meaning of the words "sought to acquire," the BIA found that the words indicate that Congress intended for the alien to make an attempt to obtain status as a lawful permanent resident within one year of such availability in order to maintain child status under the CSPA. The BIA also considered the congressional intent in enacting the CSPA, which was to bring families together when alien

---

[2] *In re Avila-Perez*, 24 I. & N. Dec. 78 (BIA 2007), provides little guidance on the issue because it did not involve a direct challenge to 8 U.S.C. § 203(h)(1)(A)'s use of "sought to acquire." In that case, the BIA considered whether the CSPA applies when a visa petition is filed before, but the visa application is filed after, the enactment of the CSPA. *Id.* at 80–81. Resolving the question, the BIA compared § 8(1) of the CSPA to § 3 of the CSPA and concluded that "[i]f Congress had intended to require aliens under [§] 8(1) to have filed their adjustment applications within a specified time, it presumably would have expressly so stated, as it did in [§] 3 of the CSPA." *Id.* at 83.

children lose the opportunity to obtain immediate relative status. *Id.* (citing H.R. Rep. No. 107–45, at 2 (2001) *reprinted in* 2002 U.S.C.C.A.N. 640, 641. Thus, the BIA concluded that Congress's use of the term "sought to acquire" lawful permanent residence under the CSPA includes substantial steps taken toward the filing of the relevant application during the relevant time period, but which fall short of the actual filing or submission to the appropriate agency. *Id.* In applying this conclusion to the facts in *Murillo*, the BIA found that the alien's actions constituted substantial steps taken to acquire lawful permanent residence because, during the one-year period, the alien and his family hired an attorney to prepare the application, all the necessary forms were completed and executed, and the alien obtained a money order for the filing fee. *Id.*

The BIA also reached a similar conclusion in *In re Kim*, No. A77 828 503, 2004 WL 3187209 (BIA Dec. 20, 2004). In that case, the BIA examined the text and reasoned that Congress had purposely used "sought to acquire" rather than "filed," and that the plain meaning of "sought to acquire" required only an attempt to get or obtain. *Id.* It found the broader interpretation consistent with the congressional intent behind the CSPA to provide relief to children of United States citizens and permanent residents. *Id.* The BIA ultimately concluded that the alien had sought to acquire lawful permanent residence within a year of her eligibility

10

because her parents had hired counsel to prepare an application for adjustment of status within the one-year period, she filed the application within a reasonable time (17 months), and she was still under the age of 21 when she filed the application. *Id. See also In re Castillo–Bonilla*, No. A98 282 359, 2008 WL 4146759 (BIA Aug. 20, 2008) (holding that, although the alien did not file an adjustment of status application until more than 14 months after his visa became available, the alien "sought to acquire" legal permanent residence status because, before his visa became available, he requested an adjustment of status at hearings before the IJ and within one year of his visa availability, he requested to adjust status in his brief submitted to the BIA).

We find the BIA's reasonable interpretation in these cases to be persuasive and in sync with the intent of Congress in enacting the CSPA. Hence, we conclude that Congress's use of the term "sought to acquire" in the CSPA is broad enough to encompass substantial steps taken toward the filing of the relevant application during the relevant time period, but does not require that the alien actually file or submit the application. Even adopting this broader interpretation, Medina's visa request and request for reinstatement of his visa registration before August 1, 2005, with the NVC does not constitute a substantial step toward the filing of the application for permanent residency with either the NVC or

11

Homeland Security. Unlike *Murillo, Kim* and *Castillo-Bonilla*, Medina did not request an adjustment of status, hire an attorney to prepare the necessary documentation, nor file the necessary documentation within one year of his visa number becoming available, August 1, 2004. Medina's only action was the visa request and reinstatement request with the NVC, and during the time he was corresponding with the NVC, Medina was in removal proceedings. Furthermore, Medina did not voluntarily return to Mexico to pursue consular processing of his visa and waited three years from the date the visa number became available to file his I-485 adjustment of status application. This limited correspondence with the NVC during the one-year time period does not constitute a substantial step toward the filing of the application for permanent residence. Therefore, we conclude that the BIA correctly concluded that Medina failed to show that he "sought to acquire" legal permanent residency within one year of his parent's visa approval number. Accordingly, Medina did not maintain his child status under the CSPA.

   B. *Post-Order Voluntary Departure*[3]

---

[3] Medina also contends in his petition that the IJ erred in failing to conduct an evidentiary hearing for him to demonstrate his entitlement to post-order voluntary departure. Because Medina does not provide any legal support for this contention, his argument is unavailing. Furthermore, Medina's entitlement to post-order voluntary departure turns on his statutory eligibility for such relief and more specifically, whether 8 U.S.C. § 1229c(b)(1)(A) requires continuous physical presence, not the circumstances of Medina's departure, which the government does not dispute.

Medina takes issue with the BIA's interpretation of the statutory language for post-order voluntary departure that he had to be continuously present in the United States for one year before the service of the NTA. He contends that no agency regulation provides guidance on this term, and there is no BIA precedential decision or judicial decision interpreting this language. Moreover, Medina claims that voluntary departure is a remedial dispensation that should be granted generously.

Although there is no agency or judicial guidance regarding the meaning of the physical presence requirement in 8 U.S.C. § 1229c(b)(1)(A) (that "the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served"), we find the language clear. In order to satisfy the eligibility requirement in this statutory provision, Medina had to be physically present in the United States for a period of at least one year immediately preceding the date he received the NTA. In other words, Medina had to be continuously present in the United States from January 13, 2004, until January 13, 2005, the date the NTA was served on Medina. At the hearing, Medina admitted that he last entered the United States on June 16, 2004. Because of Medina's departure from the country in June 2004, he was not physically present in the United States for the entirety of the relevant one year

period. *See, e.g., In re Herbert Chidi Adibe*, No. A77 803 900, 2006 WL 901421 (BIA Feb. 27, 2006) (noting that alien lacked the requisite one year physical presence requirement because he was served with a NTA on August 15, 2002, and the facts show that he last entered the United States on February 24, 2002).

We reject Medina's assertion that the physical presence requirement for post-order voluntary departure should be interpreted by analogy to the BIA's physical presence requirement in the cancellation of removal context. In that context, 8 U.S.C. § 1229b(b)(1)(A) requires that an alien be "physically present in the United States for a continuous period of not less than 10 years immediately preceding" the date the cancellation of removal application is filed. 8 U.S.C. § 1229b(b)(1)(A). This particular provision requires a longer period of presence and governs a separate form of discretionary relief. Furthermore, in that statutory provision, Congress specifically set forth special rules relating to continuous residence or physical presence and provided for the treatment of any breaks in presence. *See* 8 U.S.C. § 1229b(d). Conversely, Congress did not provide such exceptions relating to the physical presence requirement in the voluntary departure context. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

14

*Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983) (internal quotation marks omitted). Because we find no ambiguity in the statutory provision for physical presence in 8 U.S.C. § 1229c(b)(1)(A), we conclude that the BIA correctly denied Medina's request for post-order voluntary departure.

## IV. CONCLUSION

The BIA correctly concluded that Medina was not entitled to adjustment of status because he did not meet the requirements under the CSPA to maintain his child status. The BIA also correctly denied Medina's request for post-order voluntary departure because Medina did not reside in the United States for one year immediately preceding the delivery date of the NTA. Accordingly, we deny Medina's petition for review.

PETITION FOR REVIEW DENIED.