# Matter of O. VAZQUEZ, Respondent

*Decided June 8, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien may satisfy the "sought to acquire" provision of section 203(h)(1)(A) of the Act, 8 U.S.C. § 1153(h)(1)(A) (2006), by filing an application for adjustment of status or by showing that there are other extraordinary circumstances in the case, particularly those where the failure to timely file was due to circumstances beyond the alien's control.

FOR RESPONDENT: Jose Bernardo Lovo, Esquire, Dallas, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Margot Merrill-Johnson, Assistant Chief Counsel

BEFORE: Board Panel: GRANT, MALPHRUS, and MANN, Board Members.

MALPHRUS, Board Member:

In a decision dated September 15, 2008, an Immigration Judge found the respondent inadmissible under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2006), and denied his application for adjustment of status under section 245(i) of the Act, 8 U.S.C. § 1255(i) (2006). The respondent has appealed from that decision. The Department of Homeland Security ("DHS") has filed a brief in opposition. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a 28-year-old native and citizen of Mexico. On September 9, 1996, his father filed a Form I-130 (Petition for Alien Relative) on behalf of his mother, of which the respondent was a derivative beneficiary. The visa petition was approved on November 18, 1996, and an immigrant visa number became available to the respondent on March 1, 2004. Over a year later, on October 14, 2005, when he was 21 years and 9 months of age, the respondent first filed his Form I-485 (Application to Register Permanent Residence or Adjust Status) with the U.S. Citizenship and Immigration Services ("USCIS").

The respondent's application for adjustment of status was initially denied by the USCIS on the basis of an undisclosed criminal conviction. The respondent sought reopening, and on July 25, 2007, the USCIS denied the application on the ground that the respondent had "aged out" of his derivative beneficiary status. The USCIS concluded that the respondent was not eligible for the ameliorative provisions of the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2002) ("CSPA"), because he did not file his application for adjustment of status within 1 year of the visa number becoming available and therefore had not "sought to acquire" lawful permanent resident status within a year of visa availability, as required by section 203(h)(1)(A) of the Act, 8 U.S.C. § 1153(h)(1)(A) (2006).[1]

The respondent was placed in removal proceedings and was charged as an alien who was present in the United States without being admitted or paroled. At a hearing before the Immigration Judge, he conceded removability and applied for adjustment of status, arguing that he sought to acquire permanent residence within 1 year of the visa number becoming available because his parents consulted with a notario about filing an application within that period. Concluding that the phrase "sought to acquire" means an actual filing with the USCIS, the Immigration Judge denied the respondent's application for adjustment and ordered him removed to Mexico.

## II.  ANALYSIS

Section 203(h)(1)(A) of the Act, which was enacted as part of the CSPA, provides a mechanism for an applicant who has aged out to nevertheless maintain the status of a "child" under the Act. An applicant can take advantage of the age calculation mechanism in this section "but only if the alien has *sought to acquire* the status of an alien lawfully admitted for

---

[1] Section 203(h)(1) of the Act provides, in pertinent part, as follows:

> Rules for Determining Whether Certain Aliens Are Children
>    (1) In general
>    For purposes of [qualified immigrants or children following to join], a determination of whether an alien satisfies the age requirement [to qualify as a child under section 101(b)(1) of the Act] shall be made using—
>        (A) the age of the alien on . . . the date on which an immigrant visa number became available for the alien's parent[], but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability . . . .

permanent residence within one year of . . . availability" of an immigrant visa number. Section 203(h)(1)(A) of the Act (emphasis added).

In interpreting the phrase "sought to acquire," we must first determine whether it has a plain and unambiguous meaning. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). Analyzing whether language is plain and unambiguous is "determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id*. at 341. Even when considered in light of the statutory context, the phrase "sought to acquire" does not have a plain and unambiguous meaning. It is sui generis in the Act and is not a legal term of art in applicable regulations or administrative or judicial decisions. However, the context of this statutory provision does explain why Congress may have chosen to employ an ambiguous term.

The respondent contends that the plain meaning of "sought to acquire" must encompass a range of actions broader than "filing" an application for adjustment of status because Congress could simply have used the term "filed," as it has in other sections in the Act. *See, e.g.*, sections 208(a)(2)(B), 245(a) of the Act, 8 U.S.C. §§ 1158(a)(2)(B), 1255(a) (2006). This argument, viewed in isolation, has significant force. However, we agree with the DHS that the flaw in this approach is that section 203(h) applies to the DHS *and* the Department of State ("DOS"), *both* of which adjudicate requests for immigrant status.

Generally speaking, the DOS (through its consular service) adjudicates applications for immigrant visas from outside the United States, whereas the DHS (through the USCIS) adjudicates requests for adjustment of status from within the country. Thus, in drafting the CSPA, Congress needed to use language that would cover the different processes employed by the DOS and the DHS. The word "filed" is not the term ordinarily employed by the DOS to refer to initiation of the visa application process. Rather, the DOS regulations use the term "submit" when referring to a Form DS-230 (Application for Immigrant Visa and Alien Registration). *See* 22 C.F.R. § 42.63 (2012). This regulation obligates the consular officer to "ensure that Form DS-230 or Form DS-260 and all other forms an alien is required to *submit* are fully and properly completed in accordance with the applicable regulations and instructions." 22 C.F.R. § 42.63(b) (emphasis added).[2]

---

[2] Form DS-260 is the online version of the immigrant visa application.

Likewise, 22 C.F.R. § 42.63(c) requires the "*submission* of additional information" by the applicant when the consular officer deems it necessary. (Emphasis added.)

This is not to suggest that the DOS exclusively uses the term "submit" (or a variation of that word) in its regulations or that it does not use the term "filed" at all. The DOS does use the term "filing" in a regulation discussing registration. *See* 22 C.F.R. § 42.67(b) ("The alien shall be considered to be registered for the purposes of INA 221(b) and 203(g) upon the *filing* of Form DS-230 or Form DS-260, when duly executed, or the transmission by the Department to the alien of a notification of the availability of an immigrant visa, whichever occurs first." (emphasis added)). Notably, this use of the term "filing" attaches to events relatively late in the process of acquiring an immigrant visa—well after the "submission" referred to in 22 C.F.R. § 42.63. Indeed, the DOS's use of the term "filing" made it difficult to use that word in section 203(h)(1)(A) of the Act without the risk of requiring an alien to wait until the end of the application process to essentially stop the 1-year clock under the CSPA.

Because of the differences in usage between the DOS and DHS regulations, it was reasonable for Congress to avoid using the word "filed" in section 203(h)(1)(A) of the Act. This different terminology further supports our conclusion that the term "sought to acquire" is ambiguous. We must therefore apply a reasonable interpretation of that language. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) ("[A]mbiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion. Filling these gaps . . . involves difficult policy choices that agencies are better equipped to make than courts.").

To reasonably interpret the meaning of the phrase "sought to acquire," we must look at section 203(h)(1)(A) of the Act in its entirety. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). A key phrase of this section establishes the amount of time afforded to the alien to take advantage of "age-out" protection. Congress provided that an alien would have 1 year from the date of visa availability to qualify. In our view, this is a significant amount of time during which an alien can obtain legal assistance, acquire necessary documentation, and execute the appropriate forms. Since Congress has afforded aliens a full year, rather than a mere 30 or 60 days, to take advantage of the age-out rule, it is reasonable to expect the proper filing of an application, when it comes to DHS cases, as a way to unquestionably satisfy the "sought to acquire" element under section 203(h)(1)(A) of the Act.

This interpretation of the statute comports with the meaning of the words "sought" and "acquire." Obviously, filing an application for adjustment

of status is a critical step that may allow one, if otherwise found to be eligible, to "acquire" lawful permanent resident status on the basis of an available immigrant visa. Interpreting the statute in this manner also "promotes consistency and predictability, which are important principles in immigration law." *Matter of C-T-L-*, 25 I&N Dec. 341, 347 (BIA 2010).

While the proper filing of an application for adjustment of status clearly meets the "sought to acquire" provision in section 203(h)(1)(A) of the Act, the statute may also be satisfied by other actions that fall short of filing. An alien may satisfy the "sought to acquire" requirement by presenting evidence that persuasively establishes that he or she submitted an application to the appropriate agency within the DHS in the manner that the application provides, but it was rejected for a procedural or technical reason, such as the absence of a signature. We note that in the context of asylum applications, if an application was filed prior to the expiration of the 1-year deadline but was rejected and returned as not properly filed, the applicant's subsequent failure to meet the deadline may be excused if the corrected application is filed within a reasonable period after its return. *See* 8 C.F.R. § 1208.4(a)(5)(v) (2012). An application for adjustment would be considered timely filed for purposes of section 203(h)(1)(A) of the Act in similar circumstances.

Moreover, an alien might also satisfy the "sought to acquire" provision by showing that there are other extraordinary circumstances in the case, particularly those where the failure to timely file was due to circumstances beyond the alien's control.[3] In that regard, an alien may be able to show that he or she paid an attorney to assist in filing a timely adjustment application and completed and executed the application with the attorney's aid prior to the deadline, but the attorney then failed to take the ministerial step of timely filing the application with the appropriate agency, thereby effectively preventing the

---

[3] We find support for such an "extraordinary circumstances" standard from the provisions of the Act governing the issuance of immigrant visas. Under section 203(g) of the Act, an alien generally must apply for an immigrant visa within 1 year of State Department notification of the availability of a visa to prevent termination of the visa. However, there is an exception to termination if the alien can show, within 2 years of notification, that his or her "failure to apply was due to circumstances beyond the alien's control." Section 203(g) of the Act. While the DOS consular process and the DHS adjustment process differ, there are similarities between them. For example, as a general rule an alien applying for an immigrant visa through consular processing or one seeking to maintain his or her child status under the CSPA (whether through the DOS or the DHS) has 1 year to apply. Sound policy reasons support encouraging compliance with a 1-year period for both the DOS visa issuing process and the CSPA's procedures for maintaining one's status as a "child." In the former case, unused visas can be recaptured and reallocated to others awaiting such visas; in the latter, those who seek the ameliorative effects of the CSPA are encouraged to act with reasonable diligence to maintain the benefit of a "child" status.

alien from filing.  *See Matter of Lozada*, 19 I&N Dec. 637, 639 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988); *see also Mai v. Gonzales*, 473 F.3d 162, 165 (5th Cir. 2006).

However, actions that do not approximate the filing of an application or extraordinary circumstances, such as contacting an attorney about initiating the process for obtaining a visa that has become available, are insufficient to meet the requirements of section 203(h)(1)(A) of the Act.  The alternative suggested by the respondent, that the deadline could be satisfied by simply contacting an organization or an attorney for legal advice, is impractical and leaves open many questions, including how substantive the contact would need to be and what level of proof would need to be provided regarding such contact.  *See Negusie v. Holder*, 555 U.S. 511, 524 (2009) (stating that the Board's development of a reasoned interpretation may be "influenced by how practical, or impractical, the standard would be in terms of its application to specific cases").

Recently, the United States Court of Appeals for the Eleventh Circuit stated that the phrase "sought to acquire" does not require that an alien actually file or submit an application but rather can encompass "substantial steps taken toward the filing of the application for permanent residency . . . within the one year period."  *Tovar v. U.S. Att'y Gen.*, 646 F.3d 1300, 1302, 1305 (11th Cir. 2011).[4]  In its analysis of section 203(h)(1)(A) of the Act, the Eleventh Circuit discussed three unpublished Board decisions that applied a broad interpretation of the phrase "sought to acquire."  *Id.* at 1303-05.

However, the Eleventh Circuit did not reference other unpublished Board decisions that interpreted "sought to acquire" more restrictively.[5]  Moreover, neither *Tovar* nor the unpublished Board decisions it cited considered the central, and in our view convincing, argument discussed above: that the inherent vagueness of the phrase "sought to acquire" reflects that section 203(h)(1) of the Act applies to the processing of applications by two separate agencies, which use different nomenclatures.

In any event, the Eleventh Circuit ultimately held that the alien's mere requests for a visa and for reinstatement of a visa registration with the Department of State through the National Visa Center ("NVC") did not constitute even a substantial step toward the filing of an application for permanent residence. *Tovar v. U.S. Att'y Gen.*, 646 F.3d at 1305.  In that case, the alien did not make any effort to file an adjustment application in a timely

---

[4] *Tovar v. U.S. Attorney General*, 646 F.3d 1300, is not binding in this case, which arises in the jurisdiction of the Fifth Circuit. *Matter of Anselmo*, 20 I&N Dec. 25, 31 (BIA 1989).

[5] In any event, we are not bound by our decisions that have not been designated as Board precedents. *See Matter of Medrano*, 20 I&N Dec. 216, 220 (BIA 1990, 1991); *see also Matter of Echeverria*, 25 I&N Dec. 512, 519 (BIA 2011); 8 C.F.R. § 1003.1(g) (2012).

manner or return to Mexico to pursue consular processing of his immigrant visa. He also did not claim that he was prevented from filing by circumstances beyond his control. Instead, the alien only contacted the NVC to request that his visa petition not be terminated. In fact, the respondent then waited 3 years from the date the visa number became available to file an adjustment application. Although we respectfully do not agree that "substantial steps" is the proper standard and do not adopt all of the Eleventh Circuit's reasoning and analysis, we would reach the same result given the facts of that case.

In summary, we conclude that an alien may satisfy the "sought to acquire" provision of section 203(h)(1)(A) of the Act by properly filing the application for adjustment of status with the DHS. Additionally, the alien may meet the requirement by establishing, through persuasive evidence, that an application he or she submitted to the appropriate agency was rejected for a procedural or technical reason or that there were other extraordinary circumstances, particularly those where the failure to timely file was due to circumstances beyond the alien's control. The respondent, through his father, merely sought legal advice and did not actually file his adjustment application within 1 year of visa availability. We conclude that he did not satisfy the "sought to acquire" requirement of section 203(h)(1)(A) of the Act and thus is not eligible to adjust his status to that of a lawful permanent resident as a derivative beneficiary. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.