McMahon, C.J.:
Plaintiff Ronnit Schwebel brings this action, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. against Kristine Crandall, Acting Director of the Nebraska Service Center, United States Citizenship and Immigration Services ("USCIS"), and Kirstjen Nielsen, Secretary of United States Department of Homeland Security ("DHS") (collectively, the "Defendants").[1]
Plaintiff, a German citizen who has resided in the United States since age eight, has moved for summary judgment, arguing, inter alia that the denial of her application for adjustment of status to lawful permanent resident was arbitrary, capricious, or otherwise contrary to law and should be set aside, and that she should be deemed a "child" under the Child Status Protection Act ("CSPA") for purposes of making a renewed determination regarding her immigration status. Defendants have cross-moved for summary judgment, arguing that the denial of Plaintiff's application for adjustment of status to lawful permanent resident was proper because Plaintiff is not a "child" under CSPA.
For the reasons stated below, Plaintiff's motion for summary judgment is granted and Defendants' cross-motion for summary judgment is denied.
STATUTORY AND REGULATORY FRAMEWORK
In order to properly assess Plaintiff's contentions, one must first possess an elementary understanding of the three-step process through which aliens seek and secure immigrant status based on employment.
First , an alien must have a prospective employer in this country, and that employer must petition the Department of Labor ("DOL") for a "Labor Certification" on behalf of the alien by filing a Form ETA-9089, Application for Permanent Employment *324 Certification ("Form 9089"), pursuant to 8 U.S.C. § 1182(a)(5)(A).
Second , once the position offered to U.S. workers is certified as requiring alien labor, the alien's prospective employer then must file with USCIS the Labor Certification, along with a Form I-140, Immigration Petition for Alien Worker ("Form I-140"), requesting that an immigrant visa be made available to the alien worker. During the visa petition process, the employer is called the "petitioner," and the alien worker is known as the "beneficiary" of the visa petition. USCIS's approval of a visa petition does not automatically cause the agency to issue a visa or grant lawful permanent resident status to the beneficiary of the petition; instead, the beneficiary receives a place in line to wait for a visa based upon the date that the DOL accepted for processing the applicant's Form 9089, which is known as the "priority date." See 20 C.F.R. § 656.30(a), 8 C.F.R. § 204.5 ; see also Li v. Renaud 654 F.3d 376, 378 (2d Cir. 2011) (citing Bolvito v. Mukasey , 527 F.3d 428, 431 n.4 (5th Cir. 2008) ).
Third , once a visa is made available, an immigrant worker who is the beneficiary of an approved Form I-140 visa petition may apply for lawful permanent resident status by filing with USCIS a Form I-485, Application for Adjustment of Status to Lawful Permanent Resident ("Form I-485"). 8 U.S.C. § 1255(a), (c) ; see also 8 C.F.R. § 245.2(a)(2), 8 C.F.R. 204.5(n). Acting pursuant to 8 U.S.C. § 1255, the USCIS determines whether to "adjust" the resident alien's status to that of a lawful permanent resident entitled to work within the United States; if the USCIS so determines, the alien receives a "green card." See United States v. Ryan-Webster , 353 F.3d 353, 356 (4th Cir. 2003).
To avoid separating an alien worker's child from her parent upon the parent's adjustment of status to that of a lawful permanent resident, the child may also apply for a status adjustment as the principal alien's derivative family member. See 8 U.S.C. § 1153(d) ; 22 C.F.R. § 42.32(c)(2). The child is afforded "the same order of consideration" as the principal working parent. 8 U.S.C. § 1153(d). Congress has defined "child," for immigration purposes, as an unmarried person under twenty-one years of age. 8 U.S.C. § 1101(b)(1). But one's biological age does not always correspond with her immigration age.
On August 6, 2002, Congress passed the CSPA to prevent a child who turns twenty-one years old from "aging out" of her child status while her adjustment of status application is pending before the government. See 8 U.S.C. § 1153(h)(1). Specifically, the CSPA's age formula reduces the alien's biological age on the date on which a visa number becomes available to the principal by "the number of days in the period during which the applicable petition" was pending, provided that "the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year" of the date that a visa number became available. Id.
This case implicates a core issue that the CSPA was intended to ameliorate - what to do in the event that a derivative beneficiary "ages out" of child status - with the twist that the "age out" was caused, at least in part, by a bureaucratic error.
FACTUAL AND PROCEDURAL BACKGROUND
Unless otherwise noted, the following facts are undisputed.
Plaintiff, born on April 26, 1990, is a 28-year-old native and citizen of Germany who has resided in the United States since age 8. (Administrative Record ("AR"), Dkt. No. 21, at 34, 73.) This case arises out of *325 Plaintiff's separate attempts to acquire a green card on the basis of employment-based applications by her mother, Jeannette Schwebel, to secure lawful permanent resident status.
a. Application-1
On January 12, 2007, Plaintiff became the derivative beneficiary of an employment-based Form I-140 visa petition filed on her mother's behalf by her mother's employer, Quick Buy, Inc. ("Quick Buy"), with a priority date of September 14, 2006. AR at 203, 222. Plaintiff was sixteen years old at that time. (AR at 18, 34 ¶ 1, 74.) On June 12, 2007, while Application-1 was still pending before the USCIS, the U.S. Department of State released Visa Bulletin No. 107, announcing that applications for employment visas would be made available to individuals in the vast majority of employment-based categories - including the category applicable to Plaintiff's mother - starting July 1, 2007 through August 17, 2007 ("July 2007 Bulletin").See U.S. Department of State, Visa Bulletin for July 2007 (June 12, 2007), available at https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2007/visa-bulletin-for-july-2007.html.
Following this announcement, the Schwebel family's attorney, Michael H. Markovitch, Esq., advised that Plaintiff, and Plaintiff's family, should file for an adjustment of status to legal permanent residents as derivative beneficiaries of Jeannette Schwebel based upon the Form I-140 submitted by Quick Buy. (AR at 34 ¶ 5, 40.) Based on his experience and purported understanding of USCIS's practices, Markovitch believed that an application should be submitted prior to July 1, 2007, the commencement of the filing period, to account for the delay it would take for USCIS to process the application after it was delivered, as well as in anticipation of the "many filings" that were likely to be submitted pursuant to the July 2007 Bulletin. (AR at 40.) Accordingly, on June 25, 2007, Markovitch mailed to USCIS a completed Form I-485 on behalf of Plaintiff and Plaintiff's family ("Application-1"). This mailing was sent by Federal Express and was received by Defendants two days later. (AR at 187; see also Defs.' Response and Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Defs.' Rule 56.1 Stmt"), Dkt. No. 29, ¶ 8.)
Despite their obligation to do so, pursuant to 8 C.F.R. § 103.2(a)(7), Defendants did not issue a receipt acknowledging that Application-1 was processed. (Declaration of Justyn J. Gydesen in Opposition to Plaintiff's Motion for Summary Judgment, Dkt. No. 28, ¶¶ 9-11.) Plaintiff alleges that Defendants' failing, coupled with a May 2011 report published by the Office of the Inspector General for DHS, writing that USCIS management reported a "monthly average of 257,000 missing [Alien Registration Files] in all facilities," U.S. Department of Homeland Security, Office of Inspector general, OIG-11-85, at 7-8 (May 2011), "overwhelmingly" establishes that Defendants simply lost Application-1. (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Mem. of Law for Summ. J."), Dkt No. 32 at 3.) Plaintiff was not aware at the time that Defendants failed to generate a receipt upon delivery of Application-1, leaving her unaware that there might be issues with her submission. (AR at 35, ¶¶ 6-7.)
On August 9, 2007, Markovitch supplemented Application-1 by submitting a medical report on behalf of Plaintiff, documentation that was needed to perfect her visa application filing. (AR at 217-19.) This submission was also mailed by Federal Express, and - unlike with respect to the earlier mailing of Application-1 - was *326 marked as received by USCIS personnel on August 13, 2007. (AR at 217, 220.) USCIS further generated an "Interfiling" memorandum documenting Plaintiff's medical exam submission. (AR at 208.) These delivery confirmations gave Plaintiff the impression that all was well with the submission of Application-1. (AR at 34-35, ¶ 6.)
But this was not so. Plaintiff did not hear back from Defendants for nearly three years, despite making repeated inquiries. (AR at 59-61.) On February 19, 2010, following a pointed letter from Plaintiff's counsel, Defendants finally responded, stating that they had no record of Application-1's filing, and that Plaintiff would need to file a new application once immigrant visas were made available again at a later date. (AR at 61-62, 65.)
b. Application-2
On March 1, 2012, Jeannette Schwebel became the beneficiary of an employment-based Form I-140 visa petition filed on her behalf by Connexxions International USA, Inc. ("Connexxions"), which sought to employ her as a permanent resident alien worker. (AR at 151.) Jeannette Schwebel's prior employer, Quick Buy, went out of business in 2010. (AR at 173.) Connexxion's visa petition had a priority date of September 14, 2006, the priority date of Quick Buy's visa petition, pursuant to 8 C.F.R. § 204.5(e)(1), which provides that an alien worker who is the beneficiary of an approved employment-based visa petition may transfer the priority date of that petition to any future employment-based visa petition filed on behalf of the same alien by a different employer.
Based on the September 14, 2006 priority date, a visa number permitting Jeannette Schwebel to file a visa petition became available in September 2012. (Complaint ("Compl."), Dkt. No. 1, ¶ 24); Answer, Dkt. No. 20, ¶ 24.) Markovitch advised Jeannette Schwebel to file a new visa application, but informed Plaintiff that she was ineligible to file as a derivative dependent of her mother because she was twenty-two years old at the time. (AR at 35, ¶ 9.) Accordingly, on September 6, 2012, Plaintiff's mother filed a renewed Form I-485 seeking an adjustment of status on the basis of the visa petition filed by Connexxions. (AR at 112.) Jeannette Schwebel's petition was approved, and lawful permanent resident status was conferred, on January 4, 2013. (Id. ) Plaintiff's father accompanied his wife as a derivative spouse and was granted adjustment of status on the same date. (AR at 112, 114.)
Shortly after securing lawful permanent resident status for Plaintiff's parents, Markovitch initiated a congressional inquiry with USCIS on Plaintiff's behalf. (AR at 70-71.) By letter dated April 23, 2013, a congressional liaison representing Plaintiff's home district shared Defendants' response. (AR at 71.) USCIS reiterated that it had no record of Application-1 and stated that "[w]ithout definitive evidence of the filing of [the Schwebel's] I-485 applications during the only time a visa was available between July 1, 2007 and August 17, 2007, [USCIS] would have no means to consider [Plaintiff] under the [CSPA]," because Plaintiff was over 21 years old and, thus, "no longer qualified as a derivative child under the CSPA." (Id. ) According to Plaintiff, Defendants' response was the first time she learned that Application-1 was submitted prior to July 1. (AR at 35, ¶ 10.)
After consulting two other attorneys, present counsel instructed Plaintiff to file a new application for adjustment of status under the CSPA, advising that she was eligible to do so in light of the affirmative steps she undertook to file Application-1 and of the extraordinary circumstances *327 surrounding that filing. (Id. ¶ 15.) Accordingly, on September 22, 2015, Plaintiff filed Form I-1485, along with a supporting memorandum of law, seeking derivative lawful permanent resident status through her mother's employment with Connexxions ("Application-2"). (AR at 7-14, 22-23.) On October 17, 2017, USCIS, noting that her situation was "unfortunate," denied Application-2 on the basis that Plaintiff did not meet the CPSA's definition of a "child" and, thus, did not qualify as a derivative dependent of her mother. (AR at 1-3.) In so concluding, it reasoned that 8 U.S.C. § 1153(d)"necessarily limits the immigrant visa petition reference in [ 8 U.S.C. § 1153(h) ] to the petition that is the basis for the parent's adjustment." (AR at 2.)
On November 3, 2017, this lawsuit followed. (Compl.)
DISCUSSION
Plaintiff has moved for summary judgment on the basis that she qualifies as a child for purposes of determining her immigration status under 8 U.S.C. 1153(h), and that Defendants' decision to deny Application-2 - which allegedly failed to account for the circumstances surrounding the filing of Application-1 - was arbitrary and capricious, pursuant to 5 U.S.C. § 706(2)(A). (Plaintiff's Motion for Summary Judgment ("Pls.' Summ. J. Mot."), Dkt. No. 31, at 1-2) Defendant filed a cross-motion for summary judgment on January 26, 2018, denying that Plaintiff is a child under the CSPA and seeking a determination to that effect. See Defendants' Cross-Motion for Summary Judgment ("Defs.' Summ. J. Cross-Mot"), Dkt. No. 27, at 1.)
a. Standard of Review
The APA directs courts to "hold unlawful and set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although this standard is deferential, a reviewing court's "inquiry must be 'searching and careful[.]' " Nat'l Audubon Soc'y v. Hoffman , 132 F.3d 7, 14 (2d Cir. 1997) (quoting Marsh v. Or. Nat'l Resources Council , 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) ). An agency action is arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Nat'l Res. Def. Council v. EPA , 658 F.3d 200, 215 (2d Cir. 2011).
Where, as here, a party seeks judicial review of an agency action, "summary judgment is appropriate since whether an agency action is supported by the administrative record and consistent with the APA standard of review is decided as a matter of law." Residents for Sane Trash Solutions, Inc. v. U.S. Army Corps of Eng'rs , 31 F.Supp.3d 571, 586 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). While the usual summary judgment standard under Fed. R. Civ. P. 56 does not apply in such cases, see Ass'n of Proprietary Colls. v. Duncan , 107 F.Supp.3d 332, 344 (S.D.N.Y. 2015) (citing UPMC Mercy v. Sebelius , 793 F.Supp.2d 62, 67 (D.D.C. 2011) ), summary judgment is nonetheless "generally appropriate," as "[t]he question [of] whether an agency's decision is arbitrary and capricious" or in excess of statutory jurisdiction "is a legal issue amenable to summary disposition." Noroozi v. Napolitano , 905 F.Supp.2d 535, 541 (S.D.N.Y. 2012) (internal quotation marks omitted).
*328 b. Plaintiff Qualifies as a Child under the CSPA
As described above, the CSPA's age formula calculates the age of an alien by reducing her biological age on the date on which a visa number became available to the principal by "the number of days in the period during which the applicable petition" was pending, provided that "the alien [ ] sought to acquire the status of an alien lawfully admitted for permanent residence within one year" of the date that a visa number became available. See 8 U.S.C. § 1153(h)(1).
At issue is whether Plaintiff satisfied the statute's condition of "s[eeking] to acquire" lawfully permanent resident status within the requisite one-year period, and, assuming she did, whether Plaintiff's immigration age is younger than twenty-one years of age after reducing her biological age on the date that an immigrant visa number became available by the number of days "the applicable petition" was pending. Both issues favor Plaintiff.
1. Plaintiff Satisfied the CSPA's "Sought to Acquire" Condition
The Board of Immigration Appeals, whose opinions are binding on Defendants, see 8 C.F.R. § 1003.1(g), has interpreted the CSPA's "sought to acquire" language to encompass actions other than making a proper filing. In Matter of O. Vazquez , 25 I. & N. Dec. 817, 821 (BIA 2012), the Board noted that, "[w]hile the proper filing of an application for adjustment of status clearly meets the 'sought to acquire' provision," it conceded that the statute "may also be satisfied by other actions that fall short of a filing." Id. "An alien may satisfy the 'sought to acquire' requirement by presenting evidence that persuasively establishes that he or she submitted an application to the appropriate agency within the DHS in the manner that the application provides, but it was rejected for a procedural or technical reason." Id. The Board further recognized that "extraordinary circumstances ... particularly those where the failure to timely file was due to circumstances beyond the alien's control," may also suffice to satisfy the "sought to acquire" statutory condition. Id. "In that regard" - and particularly relevant here - "an alien may be able to show that he or she paid an attorney to assist in filing a timely adjustment application and completed and executed the application with the attorney's aid prior to the deadline, but the attorney then failed to take the ministerial step of timely filing the application with the appropriate agency, thereby effectively preventing the alien from filing." Id. at 821-22.
On April 15, 2015, the USCIS released a policy memorandum listing the following three factors as necessary to establish that extraordinary circumstances exist for purposes of meeting the CSPA's "sought to acquire" condition:
1. The circumstances are beyond the control of the alien and must not have been intentionally created by his or her own action or inaction;
2. Those circumstances were directly related to the alien's failure to file the application within the one-year period; and
3. The delay was reasonable under the circumstances.
USCIS Policy Memorandum, Guidance on Evaluating Claims of "Extraordinary Circumstances for Late Filing When the Applicant Must Have Sought to Acquire Lawful Permanent Residence Within 1 Year of Visa Availability Pursuant to the Child Status Protection Act , PM-6020097, at 6 (Apr. 15, 2015).
Defendants concede that Plaintiff satisfied the CSPA's "sought to acquire" requirement.
*329 (See Government's Memorandum of Law in Support of its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Opp."), Dkt. No. 30, at 28, see also Defs.' R. 56.1 Stmt, ¶¶ 17(a), 22(a), 24(a).) This Court agrees. Plaintiff took substantial steps to file Application-1 properly and was beset by the exact sort of "extenuating circumstances" that were contemplated by O. Vazquez , including that (i ) the Government failed to generate a receipt acknowledging that it accepted Federal Express delivery of Application-1; (ii ) the government failed to record and process Application-1 in the ordinary course; (iii ) Plaintiffs former attorney did not notify her that he had not received a filing receipt from the Government, which might have alerted Plaintiff to a potential issue; and (iv ) her former attorney elected to submit Application-1 a few days prior to the start of the application window, "thereby effectively preventing the alien" from effecting a timely filing. O. Vazquez , 25 I. & N. Dec, at 821-22. Moreover, Plaintiff satisfies all three requirements described in USCIS's 2015 policy memorandum, as each of these circumstances was beyond her control, directly related to the filing issues associated with Application-1, and resulted in reasonable delay.
Plaintiff's efforts suffice to establish the CSPA's "sought to acquire" condition.
2. Plaintiff is Aged Seventeen Years, Two Months, and One Day Under the CSPA
As noted, the CSPA provides that, so long as one "sought to acquire [lawful permanent resident status] within one year" of an immigrant visa becoming available, an alien's immigration age is calculated by subtracting the number of days "the applicable [visa] petition" was pending from her age on the date in which an immigrant visa number became available. 8 U.S.C. § 1153(h). Defendants aver that Plaintiff's immigration age is approximately 22 and a half years old because Application-2 - which Defendants insist is "the applicable petition" under the CSPA - was pending for nearly a week when a visa number became available to Plaintiff's mother in September 2012 - when Plaintiff was already twenty-two and a half years old.
It is true that a visa number became available to Plaintiff's mother in September 2012. It is also true, however, that a visa number became available to Plaintiff's mother on July 1, 2007, the initial moment where Plaintiff sought to acquire lawful permanent resident status. Defendants even concede this fact. (See Defs.' R. 56.1 Stmt, ¶ 5(a) (admitting that immigrant visa became available to "the vast majority of employment-based immigrants and their qualifying dependents, which included Plaintiff [,]" on July 1, 2007) (emphasis added).) Thus, applying the CSPA in a straightforward fashion, and, even accepting Defendants' argument that Application-2 is "the applicable petition," Plaintiff is a child for immigration purposes because she is aged seventeen years, two months, and one day after taking her age on July 1, 2007 (17 years, two months, and five days), and reducing it by the number of days Application-2 was pending (four days).
In an effort to avoid this outcome (and ignore altogether the critical events of 2007), Defendants argue that an alien's age calculation under the CSPA does not begin until "the applicable petition" is filed. Defendants' logic is as follows: Plaintiff's eligibility to apply for lawful permanent resident status is derivative of her mother's, pursuant to 8 U.S.C. § 1153(d). Since her mother did not achieve lawful permanent resident status until approval of the 2012 Connexxion's visa petition, Plaintiff cannot *330 derive her residency status from a period that predates that moment.
This argument is flawed in a number of respects. Most fundamentally, it finds no support in the statute. Section 1153(h) plainly and unambiguously describes the manner in which one's immigration age is to be calculated; if Congress had intended for that calculation to begin no earlier than the date of the filing of the petition through which the parent ultimately adjusts her status, then it would have drafted the CSPA with language to that effect. In the absence of such language, this Court is not permitted to add an absent phrase to change the meaning of the statute's words. See, e.g., Lamie v. United States Trustee , 540 U.S. 526, 538, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ; United States v. Piervinanzi , 23 F.3d 670, 677 (2d Cir. 1994). Since the CSPA's plain terms unambiguously address this issue, the Court must give effect to the expressed intent of Congress and apply the statute's age formula as written. See Chevron USA, Inc. v. Nat. Res. Def. Council, Inc. , 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
Assuming, arguendo that this Court considers 8 U.S.C. § 1153(h) to be ambiguous, Defendants' current interpretation is not entitled to deference, pursuant to Skidmore v. Swift , 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), because it contradicts the long-standing position that they have taken in their own interpretative guidance documents. In a memorandum, dated April 30, 2008, sent to all USCIS field agents, Donald Neufeld, USCIS's then-Acting Associate Director for Domestic Operations, stated that the age calculation to be made under 8 U.S.C. § 1153(h) is determined by "the age of the alien on the date that a visa number becomes available." See Memorandum from Donald Neufeld, Revised Guidance for the Child Status Protection Act (CSPA) , HQ DOMO 70/6.1 (Apr. 4, 2008), at 3. This stands in stark contrast to a position Neufeld takes later in the same memorandum, where he interprets 8 U.S.C. § 1151(f), a provision determining whether certain aliens qualify as "immediate relatives," to mean that the provision operates "to fix the age of an alien beneficiary on the occurrence of a specific event (e.g. filing a petition)." Id. at 2. The USCIS had occasion to interpret 8 U.S.C. § 1153 in a similar fashion. It did not.
Aside from 8 U.S.C. § 1153(d), Defendants point to no authority supporting the creative position it now takes against Plaintiff. Section 1153(d) simply states that a child "is entitled to the same order of consideration provided" to the parent. The statute does not establish an order of priority, nor does it bridge Defendants' leap in concluding that "the applicable petition" described in 8 U.S.C. § 1153(h) establishes the earliest possible moment whereby Plaintiff may derive her residency status.
Moreover, Defendants' restrictive interpretation of the CSPA is at odds with the purpose of the statute, which was "meant to be an ameliorative statute, applying to as many parties as practicable." Arobelidze v. Holder , 653 F.3d 513, 521 (7th Cir. 2011) (citing INS v. Cardoza-Fonseca , 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) ). Nor does it comport with "the 'longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.' " Id. (citing Cardoza-Fonseca , 480 U.S. at 449, 107 S.Ct. 1207 ). Defendants' logic, if accepted, would lead to the absurd result that a child could do everything in her power to "seek to acquire" lawful permanent residency status while a minor, but a bureaucratic error - of the exact sort at issue here - would deny her the opportunity to avail herself of immigration protection under the CSPA. In short, Defendants' position is unreasonable.
*331 Because Plaintiff's immigration age is seventeen years, two months, and one day, she qualifies as a "child" under the CSPA.
c. Defendants' Decision to Reject Application-2 Was Arbitrary and Capricious
As noted earlier, USCIS rejected Application-2 in a decision dated October 17, 2017, concluding that Plaintiff was "already 21 years old" when, in March 2012, the Connexxions visa petition was filed on her mother's behalf. (AR at 1-3.) In support of this conclusion, USCIS stated that 8 U.S.C. § 1153(d)"necessarily limits the immigrant visa petition referenced in [ 8 U.S.C. § 1153(h) ] to the petition that is the basis for the parent's adjustment. Otherwise, there would be no principal beneficiary for which the 'child could be a derivative.' " (AR at 2.)
This decision was arbitrary and capricious, because, as established above, it did not properly apply the CSPA's age formula, misinterpreted 8 U.S.C. § 1153(d) as compelling the conclusion that a dependent alien's age calculation may begin no earlier than the filing date of the petition through which her parent adjusts status, and "entirely fail[ed] to consider an important aspect of the problem" - namely, the circumstances surrounding the filing of Application-1, which triggered the protections of the CSPA. See Nat'l Res. Def. Council , 658 F.3d at 215.
Pursuant to 5 U.S.C. § 706(2)(A), the Court hereby holds unlawful and sets aside USCIS's October 17, 2017 decision denying Plaintiff's application to register for lawful permanent status. The Court further directs USCIS, within ten days of entry of this Decision and Order, to reopen and adjudicate Application-2 in accordance with the law and the agency's own policy governing the exercise of discretion under 8 U.S.C. § 1255. See USCIS Policy Manual, Chapter 9 - Legal Analysis and Use of Discretion , 2017 WL 2126545 (Jan. 5, 2017) ("Absent compelling negative factors, an officer should exercise favorable discretion and approve the application.").
d. Attorneys' Fees
Plaintiff requests an award of her costs and reasonable attorneys' fees incurred, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), asserting that an agency action that is arbitrary and capricious cannot be "substantially justified" for EAJA purposes.
Plaintiff's application for attorneys' fees is premature. Although she has prevailed on her motion for summary judgment, she is not at this moment a "prevailing party" within the meaning of 28 U.S.C. § 2412(a)(1) and (d)(1)(B), as she does not yet have a "final judgment" (i.e. one that is no longer appealable, pursuant to 28 U.S.C. § (d)(2)(H) ). Moreover, Plaintiff has not complied with the statutory requirement obligating her to submit "an itemized statement ... stating the actual time expended and the rate at which fees and other expenses were computed." Id. § d(1)(B).
Accordingly, if Plaintiff wishes to apply for an award of fees and other expenses, she must do so by motion in accordance with all provisions of the statute, at such time as she has obtained a "final judgment."
CONCLUSION
For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED, and Defendants' cross-motion for summary judgment is DENIED. Plaintiff's fee application is denied without prejudice as premature.
The Clerk of Court is directed to terminate the motions at Dkt. Nos. 27 and 31, to *332 enter a final judgment (1) granting Plaintiff's motion for summary judgment and denying Defendant's cross motion; (2) vacating the USCIS's October 17, 2017 decision denying Plaintiff's application to register for lawful permanent status; and (3) directing the USCIS to adjudicate Plaintiff's application in accordance with this opinion. When final judgment has been entered, the Clerk shall close the file in this Court.

Pursuant to Federal Rule of Civil Procedure 25(d), Kristine R. Crandall and Kirstjen Nielsen are automatically substituted for Gregory A. Richardson and Elaine Duke as defendants in this action.