**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1016

WANRONG LIN,

                    Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney General,

                    Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued:  September 16, 2014        Decided:  November 14, 2014

Before DUNCAN, AGEE, and DIAZ, Circuit Judges.

Petition denied by published opinion.  Judge Duncan wrote the
opinion, in which Judge Agee and Judge Diaz joined.

**ARGUED:** Theodore N. Cox, New York, New York, for Petitioner.
Aimee J. Carmichael, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.  **ON BRIEF:** Stuart F. Delery,
Acting Assistant Attorney General, Civil Division, John S.
Hogan, Senior Litigation Counsel, Office of Immigration
Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

DUNCAN, Circuit Judge:

Petitioner Wanrong Lin seeks judicial review of an order of the Board of Immigration Appeals ("BIA" or "Board") denying his second motion to reopen removal proceedings. Lin contends that the BIA abused its discretion in evaluating the evidence he submitted in support of his motion to reopen, and in finding the May 2007 Department of State Profile of Asylum Claims and Country Conditions on China ("2007 Profile")[1] reliable. For the reasons that follow, we deny Lin's petition for review.

I.

A.

Many of the facts leading to Lin's current petition for review are set forth in this court's opinion in Lin v. Holder, 452 F. App'x 369 (4th Cir. 2011). We summarize the relevant portions here.

Lin, a native and citizen of the People's Republic of China, entered the United States without inspection and subsequently married a U.S. citizen. Lin and his wife have three children, all U.S. citizens. In January 2007, the

---

[1] The 2007 Profile reports that, in the decade preceding its publication, there were no cases of forced abortion or sterilization in Lin's home province of Fujian, China. See J.A. 23.

2

Department of Homeland Security served Lin with a Notice to Appear, charging him with being removable under 8 U.S.C. § 1182(a)(6)(A)(i). During Lin's removal proceedings before an Immigration Judge ("IJ"), Lin filed applications for asylum, withholding of removal, and relief pursuant to the United Nations Convention Against Torture.

The IJ held a hearing on the merits of Lin's asylum claim in March 2008. Lin testified that, given the birth of his two children[2] in the U.S. in violation of China's one-child family planning policy, he feared persecution, specifically forced sterilization, upon his return to China. Lin submitted several identification documents for himself and his family, but failed to submit evidence regarding country conditions and family planning policies in China. Moreover, though Lin claimed to have evidence substantiating his father's past persecution for family planning violations due to Lin's birth, Lin did not submit such evidence to the IJ, and Lin's father, who lives in the U.S., failed to testify on his behalf.

The IJ denied Lin's applications and ordered his removal to China. The IJ found that Lin had not submitted sufficient documentation to support his claims of possible future

---

[2] Lin's third child was born after he submitted his asylum application.

3

persecution and torture stemming from the birth of his children. With respect to Lin's past persecution claim, the IJ did not find credible Lin's testimony regarding his father's arrest in connection with Lin's birth, or Lin's related detention by authorities as a child. The IJ determined that this testimony was inconsistent with Lin's asylum application and uncorroborated by any objective evidence.

Lin appealed this decision to the BIA, which affirmed all of the credibility and evidentiary findings of the IJ, as well as the order of removal. Lin did not file a petition for review of the BIA's decision with this court.

In February 2010, Lin filed a motion to reopen his asylum claim with the BIA, arguing that material and previously unavailable documents demonstrated changed country conditions in China and established that Lin would face fines and forced sterilization if repatriated. Lin asserted that coercive practices were widely used in his home province of Fujian to implement China's family planning policies, and that he would be subject to these practices on return. Lin also questioned the 2007 Profile's reliability and criticized the BIA's reliance on this report in previous decisions.

The BIA denied Lin's motion to reopen for several reasons. First, the Board noted that Lin's motion was not accompanied by an affidavit, and therefore Lin's counsel's statements that Lin

4

would be forcibly sterilized were not evidence. Second, the Board determined that several of Lin's documents had been previously submitted to the BIA with his first asylum claim, had not been properly authenticated, were incomplete, or had previously been considered by the BIA in other, precedential decisions. Third, the BIA rejected Lin's argument that it should grant his motion to reopen because the Board had granted a motion to reopen based on similar documents in an unrelated case. Finally, the BIA rejected Lin's argument that the 2007 Profile was unreliable, finding that Lin failed to provide evidence that proved his claim or demonstrated that his expert, Dr. Flora Sapio, was qualified to make such a determination.

Lin timely filed a petition for review of the BIA's decision. In an unpublished decision released on October 28, 2011, this court denied Lin's petition for review. We found that the BIA did not abuse its discretion in rejecting certain documents as unauthenticated, relying on the 2007 Profile, or rejecting Lin's claim of economic persecution where Lin had provided no financial information. See Lin, 452 F. App'x at 372-73.

B.

On June 11, 2012, Lin filed a second motion to reopen with the BIA. In this motion, Lin argued that "new and previously unavailable evidence . . . establishe[d] changed country

5

conditions in China with respect to the government's enforcement of the population control policy since [his] hearing before the [IJ]." J.A. 18. Lin specifically alleged that the new evidence "demonstrate[d] that the 2007 Profile does not reflect current conditions [in China] and is an unreliable source," J.A. 18, that officials in Lin's home province of Fujian use coercive measures to enforce "population targets and quotas," J.A. 19, and that "an official policy change" in Fujian Province now mandates sterilization for parents of U.S.-born children, who have not acquired legal status abroad, "without exception," J.A. 19.

On December 11, 2012, the BIA denied Lin's second motion to reopen, concluding that Lin's "evidence [was] not sufficient to establish a change in circumstances or country conditions 'arising in the country of nationality' so as to create an exception to the time and number limitations for filing another . . . motion to reopen." J.A. 7 (quoting 8 U.S.C. § 1229a(c)(7)(C)(ii)). The Board pointed out that much of the evidence Lin attached to his second motion to reopen had been previously submitted, J.A. 4-5, and that Lin's documents from China "ha[d] not been sufficiently authenticated in any manner." J.A. 5.

The BIA discussed Lin's evidence category-by-category. In doing so, it determined that Lin's submissions were insufficient

6

to show that he would be subject to sterilization in China. First, the Board noted that Lin's evidence indicated that administrative penalties, rather than coercive measures, are used to enforce China's family planning policies. Second, the Board found that Lin's evidence suggesting that his children would be considered Chinese nationals did not establish that Lin would be sterilized. Third, the Board noted that Lin had not demonstrated that the policies or practices highlighted in his submitted documents were applicable to him. For example, the evidence either pertained to locales outside his home of Fuzhou City,[3] or did not involve sterilizations following the birth of U.S.-born children. Fourth, the Board concluded that Lin had not shown that the 2007 Profile was unreliable.

Alternatively, because he had not offered information relevant to his current financial situation, the Board determined that Lin had not shown that he would be subjected to economic harm amounting to persecution if repatriated to China. As such, the Board concluded that Lin "ha[d] not satisfied his burden to demonstrate that his removal proceedings should be reopened." J.A. 7. This petition for review followed.

---

[3] Lin is from Tantou Village, Guantou Town, in Fuzhou City, which is located in Fujian Province, China. See J.A. 5.

II.

Lin presses two arguments on appeal. First, Lin argues that his petition should be granted in light of our decision in Chen v. Holder, 742 F.3d 171 (4th Cir. 2014), in which we held that it was improper for the BIA to rely on the 2007 Profile without accounting for strong contradictory evidence that petitioners would be forcibly sterilized if returned to China, id. at 179-81. Turning to the merits, Lin argues next that the BIA abused its discretion by failing to properly consider what Lin characterizes as new, previously unavailable, and material evidence establishing changed country conditions in China related to the enforcement of the one-child policy. We consider each issue in turn.

We review the BIA's denial of a motion to reopen for abuse of discretion. INS v. Doherty, 502 U.S. 314, 323-24 (1992); Mosere v. Mukasey, 552 F.3d 397, 400 (4th Cir. 2009); see also 8 C.F.R. § 1003.2(a). The BIA's decision "is reviewed with extreme deference, given that motions to reopen are disfavored because every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." Sadhvani v. Holder, 596 F.3d 180, 182 (4th Cir. 2009) (quoting Massis v. Mukasey, 549 F.3d 631, 636 (4th Cir. 2008)) (internal quotation mark omitted). Therefore, we "reverse the BIA's decision only if it is 'arbitrary, irrational, or contrary to

law.'" Mosere, 552 F.3d at 400 (quoting Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002)).

An alien may file only one motion to reopen within ninety days of the final administrative decision sought to be reopened. 8 C.F.R. § 1003.2(c)(2). A motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." Id. § 1003.2(c)(1). The time and numerical limits on motions to reopen, however, do not apply to a motion to reopen proceedings "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." Id. § 1003.2(c)(3)(ii) (emphasis added).

In the context of motions to reopen based upon changed country conditions in China associated with family planning policies, the BIA will reopen the case only if:

> on a case-by-case analysis, the genuine, authentic, and objectively reasonable evidence proves that (1) a relevant change in country conditions occurred, (2) the applicant has violated family planning policy as established in that alien's local province, municipality, or other relevant area, and (3) the violation would be punished in a way that would give rise to a well-founded fear of persecution.

9

In re S-Y-G-, 24 I. & N. Dec. 247, 251 (BIA 2007). The petitioner carries a "heavy burden"; he or she must show that "the new evidence offered would likely change the result in the case." In re Coelho, 20 I. & N. Dec. 464, 473 (BIA 1992).

## III.

Lin first argues that our decision in Chen mandates reopening of his removal proceedings. We begin with a brief summary of our decision in Chen as a useful predicate for the discussion that follows.

## A.

In Chen, a husband and wife sought asylum claiming that they would face involuntary sterilization in China due to the birth of their two children in the United States. 742 F.3d at 175. The IJ found the petitioners credible, but concluded that the couple failed to prove genuine fear of future persecution that was objectively reasonable for two reasons. First, China's one-child policy does not apply to foreign-born children, and second, it imposes only economic penalties for such violations. Id. In making this determination, the IJ relied heavily on the 2007 Profile, "indicat[ing] without explanation that the [2007 Profile] was simply 'more persuasive'" than other evidence of record. Id. at 176. The IJ also ignored other submissions wholesale, including the 2009 Annual Report from the

Congressional-Executive Commission on China ("2009 CECC Report") and a webpage maintained by the Fuzhou City Family Planning Committee.[4] Id. The BIA adopted and affirmed the IJ's decision, "[r]elying exclusively on the [2007 Profile]" to conclude that coercive measures rising to the level of persecution would not be used against the petitioners to enforce China's one-child policy. Id. at 177 (emphasis added).

This court granted Chen's petition for review and remanded the case to the BIA to address compelling evidence that the IJ and BIA ignored. The court acknowledged that State Department Reports are "highly probative evidence in a well-founded fear case." Id. at 179 (quoting Gonahasa v. INS, 181 F.3d 538, 542 (4th Cir. 1999)) (internal quotation mark omitted). It cautioned, however, that "the BIA should avoid treating these Country Reports 'as Holy Writ' immune to contradiction," id. (quoting Galina v. INS, 213 F.3d 955, 959 (7th Cir. 2000)), and instead must "ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder," id.

---

[4] This webpage is maintained by the family planning committee in Lin's home city. However, as we discuss below, Lin's case is distinguishable from Chen's on several grounds, and in fact, Lin submitted this document as well as the CECC Report when he filed his first motion to reopen, see J.A. 1,294, 1,683, and we held that the BIA did not abuse its discretion in determining that those submissions were not sufficient to establish changed country conditions.

11

(quoting Baharon v. Holder, 588 F.3d 228, 233 (4th Cir, 2009)) (internal quotation marks omitted). This court also determined that the 2009 CECC Report and the Family Planning Committee website were legally significant contradictory evidence the BIA had failed to account for. See id. at 181.

We begin our analysis with Chen--ultimately concluding that it is materially distinguishable from the petition here. We then consider independently Lin's petition on its merits.

B.

Lin's case differs from Chen in two critical respects, which we address in turn. The first is the extent to which the BIA considered and addressed a range of evidence, including the 2007 Profile. The second is that Lin's claims arise in a markedly different procedural posture.[5]

i.

In Chen, we appropriately took the BIA to task for its treatment of the 2007 Profile "'as Holy Writ' immune to contradiction." Id. at 179 (quoting Galina, 213 F.3d at 959). In consequence, the BIA "failed to consider compelling contradictory evidence suggesting that forced sterilizations are still a reality for Chinese nationals such as [the

_____

[5] We note as well that petitioners in Chen were found credible--whereas Lin was not--but that need not factor into our analysis.

12

petitioners]." Id. The Chen court acknowledged that "[a]bsent powerful contradictory evidence, the existence of a State Department report supporting the BIA's judgment will generally suffice to uphold the Board's decision." Id. (alteration in original) (quoting Gonahasa, 181 F.3d at 542) (internal quotation marks omitted). Nevertheless, it was clear that the Board in Chen "selectively consider[ed] evidence," id. (quoting Tang v. Att'y Gen., 578 F.3d 1270, 1280 (11th Cir. 2009) (internal quotation mark omitted)), and "cherry-picked statements from the [2007 Profile]," id., while simultaneously failing to explain or account for documents such as the 2009 CECC Report and the Family Planning Committee website in any "meaningful way," id. at 181.

The facts are markedly different here; the Board's decision does not treat the 2007 Profile as immune to contradiction or fail to account for contradictory evidence in the record. As an initial matter, the BIA here did not ignore the 2009 CECC Report or the Family Planning Committee website in favor of the 2007 Profile, as did the Board in Chen. Moreover, Lin submitted those documents to the BIA when he filed his first motion to reopen in 2010, see J.A. 1,294, 1,683, and we have already held that the BIA did not abuse its discretion in determining that those submissions, alongside Lin's other evidence, were not sufficient to establish changed country conditions. See Lin,

13

452 F. App'x at 372-73. We will not revisit that decision here. See Sejman v. Warner–Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988) ("[W]hen a decision of an appellate court establishes the 'law of the case,' it must be followed in all subsequent proceedings in the same case." One exception to this rule applies where "controlling authority has since made a contrary decision of law applicable to the issue." (quoting EEOC v. Int'l Longshoremen's Ass'n, 623 F.2d 1054, 1058 (5th Cir. 1980)) (internal quotation mark omitted)). Given the distinctions just noted and those we discuss below, Chen does not warrant disturbing the law of the case pertaining to the BIA's evaluation of the 2009 CECC Report and the Family Planning Committee website.

Moreover, unlike the Board in Chen, the BIA's decision here to rely on the 2007 Profile was considered and reasoned. In fact, we recognized in Chen "that the BIA and IJ are not required to discuss every piece of evidence in the record," 742 F.3d at 179, simply noting that a Board's decision must be explained "in terms sufficient to enable a reviewing court to perceive that [the Board has] heard and thought and not merely reacted," id. (quoting Ayala v. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010) (internal quotation mark omitted)). There, the Board's "boilerplate language . . . was insufficient to demonstrate that the agency gave [contradictory evidence] more

14

than perfunctory consideration." Id. at 181. Here, to the contrary, the BIA catalogued the contents of Lin's evidentiary submissions in detail and discussed its reasons for continuing to find the 2007 Profile valid. See J.A. 4-6. Although the BIA here did not ultimately credit the evidence Lin offered to attack the 2007 Profile, considering and failing to credit certain evidence is far different from "ignoring . . . evidence that . . . calls into question the conclusion the judge is attempting to reach," Chen, 742 F.3d at 179 (quoting Tang, 578 F.3d at 1280) (internal quotation mark omitted), which was the court's concern with the Board's decision in Chen.

ii.

The procedural posture of Lin's petition also distinguishes it from Chen. In Chen, the petitioners sought asylum on direct review,[6] and this court determined that the BIA's failure to analyze fully the petitioners' evidentiary submissions might have impacted the Board's determination that the petitioners failed to satisfy their burden of proving a well-founded fear of persecution. 742 F.3d at 179-81. In contrast, Lin seeks review

---

[6] Technically, Chen was an appeal from a reopened proceeding because the husband's and wife's separate proceedings were consolidated into one. See 742 F.3d at 174-75. This makes no substantive difference for the purposes of our review because Chen was not an appeal from a denial of a motion to reopen, let alone a second such motion.

15

of the denial of a second motion to reopen. Lin's burden at this juncture was to show that country conditions in China were materially different from those conditions at the time of his original removal proceedings. See 8 C.F.R. § 1003.2(c)(3)(ii).

As an initial matter, this court has already concluded, based on much of the same evidence now before us--including the very 2009 CECC Report and the Family Planning Committee website at issue in Chen--that Lin failed to demonstrate changed country conditions. See Lin, 452 F. App'x at 373. As such, though some of the documents before us were also presented in Chen, the procedural posture here explains why the BIA did not consider the documents the Board should have considered in Chen: because they were the same documents that we already concluded failed to meet the burden for reopening.

Moreover, it bears repeating that the BIA's decision to deny a motion to reopen is reviewed for abuse of discretion. See Sadhvani, 596 F.3d at 182. Here, the BIA catalogued Lin's submissions, both old and new, evaluated the evidence of record, and explained why the evidence did not meet Lin's heavy burden. Such diligence falls far short of arbitrariness. Cf. Chen, 742 F.3d at 181.

16

IV.

Turning to the merits of Lin's case, the BIA did not abuse its discretion in determining that his submissions did not establish changed country conditions in China related to the enforcement of the one-child policy. The BIA is not required to "expressly parse or refute . . . each individual argument or piece of evidence," Wang v. BIA, 437 F.3d 270, 275 (2d Cir. 2006) (quoting Chen v. U.S. Dep't of Justice, 434 F.3d 144, 160 n.13 (2d Cir. 2006)) (internal quotation mark omitted); see also Chen, 742 F.3d at 179, particularly evidence that "the BIA is asked to consider time and again," id. The Board here considered the evidence of record as a whole, discussed specific submissions in its decision, and found that the evidence did not support a finding that China's sterilization policies would be applied to Lin.

The BIA did not abuse its discretion in this regard for four reasons, which we address in turn. First, many of Lin's documents were unauthenticated. Second, much of Lin's evidence was neither new nor previously unavailable. Third, to the extent that Lin's evidence was new, it was not relevant to his circumstances or his home province in China. And finally, Lin's evidence was not sufficient to discredit the findings in the 2007 Profile.

17

A.

The BIA did not abuse its discretion in determining that Lin's evidence was insufficient to show that he would be subject to sterilization in China because much of it was unauthenticated. As the Board put it, "foreign documents that have not been sufficiently authenticated in any manner are not considered genuine, authentic, [or] objectively reasonable evidence." J.A. 5. This was not an abuse of discretion.

To be admissible in an immigration proceeding, a foreign-government document must "be evidenced by an official publication thereof, or by a copy attested by an officer so authorized." 8 C.F.R. § 1287.6(b)(1). Lin admits that the evidence from China fails to meet the requirements of this regulation. Rather, he argues that failure to comply with the regulation is not itself a sufficient basis for rejecting evidence as unauthenticated.

While Lin is correct in this regard, the BIA did not, in fact, conclude that Lin's documents were unauthenticated solely because they failed to comply with the regulation. Instead, the BIA stated that, although Lin's attorneys "sought information about some of the documents," the foreign documents had "not been sufficiently authenticated in any manner." J.A. 5 (emphasis added). Lin first suggests that he proffered an alternative means of authentication by submitting new Chinese

18

documents that "provid[e] context" and confirm the "likely authenticity" of his previously submitted unauthenticated documents. Appellant's Br. at 32-33. In the alternative, Lin argues that the BIA failed to afford him an opportunity to authenticate his foreign documents by alternative means.

Sufficient alternative means of authentication include "provid[ing] information concerning how the document was obtained, identify[ing] the source of the information contained in the document, [and] show[ing] that there are consistencies between the information contained in the otherwise unauthenticated document and authenticated documents." Zhu v. Att'y Gen., 744 F.3d 268, 274 (3d Cir. 2014).

As an initial matter, many of these "authenticating" documents were previously submitted along with Lin's first motion to reopen, compare J.A. 788-89, 797, 805-06, 815-17, 825-30, with J.A. 1,647-48, 1,652, 1,656-57, 1,662-64, 1,668-73, and we held that the BIA did not abuse its discretion by rejecting them as inauthentic at that time. Lin, 452 F. App'x at 372. With respect to Lin's newly submitted foreign documents, though courts have held that authenticity may be alternatively shown by highlighting consistencies between "otherwise unauthenticated document[s] and authenticated documents," Zhu, 744 F.3d at 274, we reject the argument that unauthenticated documents could authenticate other unauthenticated documents.

19

Turning to Lin's argument that the BIA failed to afford him an opportunity to authenticate the documents from China by alternative means, the government notes that, following Lin's first unsuccessful motion to reopen, this court "provided Lin with a blueprint for authentication" by suggesting that he should have provided an affidavit explaining how he acquired the Chinese documents. Appellee's Br. at 18; see also Lin, 452 F. App'x at 372. Yet Lin's affidavit here makes no mention of how these documents came into his possession. See J.A. 99. In light of these omissions, and against the backdrop of our deferential standard of review, we conclude that it was not an abuse of discretion for the BIA to determine that it could not rely on Lin's documents from China because they had not been authenticated in any manner.

## B.

In addition, many of the documents Lin submitted were neither new nor previously unavailable, and as such the BIA did not abuse its discretion in deeming them insufficient to show that Lin would be subject to sterilization in China. Lin bears the burden of establishing that the evidence "was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1).

Lin included eighty-two exhibits with his second motion to reopen. See J.A. 115-129; see also J.A. 130-1,290. As the

20

Board pointed out, many of them were previously available, as evidenced by the fact that they were included with his first motion to reopen, see J.A. 4-5, the denial of which, as has been noted, this court affirmed in Lin, 452 F. App'x at 373.

The Board grouped the categories of documents Lin included with his second motion to reopen, distinguishing those Lin "previously submitted" from those "additional" materials that were new.[7] See J.A. 4-5. In fact, sixty-one of the eighty-two exhibits pre-date the filing of Lin's first motion to reopen,[8] and Lin fails to provide any explanation as to why they could not have been discovered or presented earlier.[9] The Supreme

---

[7] Again, although the Board did not also catalog each of the eighty-two exhibits, it is not required to do so. See Wang, 437 F.3d at 275.

[8] The exhibits that pre-date the February 2010 filing of Lin's first motion to open are as follows: Exhibits B, E, F, G, H, I, J, L, M, N, O, P, Q, U, V, W, X, Y, Z, AA, EE, FF, GG, HH, II, MM, NN, OO, PP, QQ, RR, SS, TT, VV, WW, XX, YY, AAA, BBB, CCC, DDD, EEE, FFF, GGG, HHH, III, JJJ, KKK, LLL, MMM, NNN, OOO, PPP, QQQ, RRR, SSS, TTT, UUU, VVV, WWW, XXX. In his second motion to reopen, Lin relies heavily on several of these documents to establish changed country conditions, including Exhibits RR-TT (J.A. 695-721) and AAA-HHH (J.A. 787-876). See Appellant's Br. at 32-33. These exhibits range in date from 2005 to 2009, which means that they were available before Lin filed his first motion to reopen in February 2010.

[9] Lin makes repeated, conclusory assertions in his brief that this evidence is new or previously unavailable, but provides no explanation as to why. See, e.g., Appellant's Br. at 12, 19, 21, 25, 28. Lin also erroneously attributes some significance to the fact that certain of his pre-February 2010 documents post-date the 2007 Profile. See J.A. 18.

21

Court has noted that "[e]vidence is not previously unavailable merely because the movant chose not to . . . present evidence earlier," Dada v. Mukasey, 554 U.S. 1, 14 (2008) (quoting 1 Gordon § 3.05[8][c], at 3-76.34) (internal quotation mark omitted), and that evidence of changed country conditions is not new as long as it "could have been foreseen or anticipated at the time of the earlier proceeding," INS v. Doherty, 502 U.S. 314, 326 (1992). The Board did not abuse its discretion in declining to consider them at this juncture.

C.

With respect to the new documents, the BIA considered and found them not to be material. For the following reasons, we agree.

Because Lin's new evidence was not relevant to his circumstances, the BIA did not abuse its discretion in deeming the findings contained therein immaterial. The BIA will reopen asylum proceedings only if the evidence proves that "a relevant change in country conditions has occurred." In re S-Y-G-, 24 I. & N. Dec. at 251 (emphasis added). As to the twenty-one documents Lin submitted that either post-date his first motion to reopen, or are undated, none sheds light on Lin's specific

22

circumstances.[10]     Indeed, even if we consider Lin's unauthenticated or previously available evidence, the evidence of record does not show a relevant, material change in country conditions because Lin has not made a showing that family planning policies in China would impact him if he were repatriated.

First, as was true of most of Lin's prior evidence, that which is newly submitted continues to reflect conditions in

---

[10] See, e.g., J.A. 351-55 (2011 FOIA request letter from Lin's attorney), J.A. 385-89 (2010 magazine article about a woman from Puning who was sterilized), J.A. 390-97 (2011 newspaper article about the seizing of children for failure to pay social compensation fines), J.A. 398-99 (2011 news article about a woman from Fujian Province who was sterilized), J.A. 448-61 (2011 report detailing case profiles of women mistreated under the one-child policy), J.A. 462-73 (2010 document about family planning policies in Chang Le City), J.A. 474-85 (same), J.A. 602-13 (undated family planning policy of Ying Qian Town making no reference to forced sterilization), J.A. 614-22 (undated family planning policy of Ying Qian Town referring to "remedial measures" only in the context of unwanted pregnancies), J.A. 722-30 (undated FAQ document referring to sterilization of women in Langqi Town), J.A. 774-86 (2010 family planning policy for Lian Jiang), J.A. 1,260-62 (2012 article about a woman who fled from forced sterilization), J.A. 1,263-65 (2012 article indicating that China is launching a program to stop the use of threats in the promotion of the one-child policy), J.A. 1,266-68 (2011 article about forced abortions), J.A. 1,269-70 (2010 FOIA request for documents pre-dating 2007), J.A. 1,271-77 (2012 FOIA request for shipping codes from 2003), J.A. 1,278-90 (undated report containing a general discussion of "unspecified 'remedial measures'" taken in Fujian Province, J.A. 1284).

locales outside of his home region.[11]  For example, Exhibits CC and DD post-date the filing of Lin's first motion to reopen, but describe conditions in a city some distance away from Lin's home village.  See J.A. 463-85.  Exhibit CC describes family planning efforts targeting migrant workers, J.A. 463-73, while Exhibit DD provides a general outline of an assessment and bonus program geared toward "rais[ing] the overall level of . . . family planning work," J.A. 475, but does not specifically detail tactics or targets of this work, J.A. 475-85.

Second, as was also true of similar evidence rejected for the same reason in the prior proceeding, much of Lin's evidence pertains to practices involving women.  Exhibit RR, for example, states that "Chinese women whom [sic] have given birth to two children in a foreign country . . . are required to return to China and undergo [a] sterilization operation."  J.A. 695 (emphasis added).  Similarly, Exhibits BBB and DDD focus exclusively on the requirement that "women with two or more children are required to [undergo] sterilization."  J.A. 797, 816.  Exhibits R, T, YYY, and AAAA--recent news articles about family planning efforts in China--also pertain exclusively to remedial measures taken against women.  See J.A. 386 (detailing

---

[11]  The evidence pertaining to Lin's home province is inauthentic, not relevant, or not new.

24

the Puning Family Planning Bureau's "Iron Fist Campaign," targeting women who had more than one child); J.A. 399 (reporting the story of a woman who was captured and forced to have sterilization surgery); J.A. 1,261 (stating that a woman in Fujian Province was held down on an operating table in an attempt to forcibly sterilize her); J.A. 1,267 (noting that "Chinese authorities routinely force women to terminate 'unauthorized' pregnancies"). In addition to their exclusive focus on women, they also shed no light on the treatment of men returning to China with foreign-born children, as we discuss below.

Third, the evidence of record establishes that, because Lin's wife is a U.S. citizen, Lin's family would be exempt from China's sterilization requirements. At oral argument, Lin in fact conceded that his wife will not be forcibly sterilized due to her citizenship status, a point supported by the evidence he submitted. See J.A. 695 (explaining that Chinese women are required to undergo sterilization "[u]nless they change their nationalities, then they may be exempt from sterilization"). Lin nevertheless argues that he remains subject to sterilization.[12] Lin relies on an entry on the Fujian Population

---

[12] Lin does not explain why or how a family planning policy could exempt only one member of a married couple.

25

and Family Planning Committee Official Website to support this assertion. A Chinese man whose wife was a legal resident, but not a citizen, of another country inquired as to whether the birth of his two children violated Chinese family planning policies. The website advises that, for couples "who decide not to give birth to more children," it is "highly recommend[ed]" that they choose "male / female sterilization as their first choice [contraceptive method]." J.A. 406 (emphasis added). While this website indicates that sterilization is recommended as a form of birth control, it does not suggest that it is required. In the face of evidence that is equivocal at best, we cannot find that the Board abused its discretion in declining to rely on it in its current iteration.

D.

Finally, we turn to the BIA's conclusion that Lin had not established that the 2007 Profile was "unreliable." J.A. 6 (internal quotation marks omitted). Lin offered two categories of new evidence challenging the continued validity of the 2007 Profile: the CECC Reports from 2009 and 2010, see J.A. 131-58, 160-90, and an affidavit of Dr. Flora Sapio, J.A. 192-251.

Turning to the reports first, Lin had previously submitted the 2009 CECC Report when he filed his first motion to reopen, and this court upheld the BIA's determination that the Report's "general conclusions"--which focused on women--were

26

"insufficient to demonstrate the likelihood of enforcement against Lin specifically" and establish changed country conditions. Lin, 452 F. App'x at 373. The 2010 CECC Report does not affect this analysis. Although the 2010 CECC Report updates the 2009 version, it does not provide compelling evidence of a material change in the law or its enforcement. See In re S-Y-G-, 24 I. & N. Dec. at 257 ("[A] new report or a new law is not evidence of changed conditions without convincing evidence that the prior version of the law was different, or was differently enforced, in some relevant and material way.").

In its decision, the Board observed that these CECC reports indicate that "administrative punishments are used to enforce the family planning policy." J.A. 5. Indeed, both the 2009 and 2010 CECC Reports discuss the continuation of population planning efforts, and specifically the impact on women, but no evidence in the 2010 CECC Report suggests that the family planning policies in Fujian Province are differently enforced against men in any relevant way that would undercut the continued reliability of the 2007 Profile.

Second, Lin submitted the affidavit of Dr. Flora Sapio as "'countervailing' evidence of country conditions and flaws in the [2007 Profile]." Appellant's Br. at 38 (quoting Albasic v. Mukasey, 547 F.3d 78, 87 n.6 (2d Cir. 2008)). The BIA explicitly considered Dr. Sapio's affidavit in its decision,

27

rejecting it because it speculated about the State Department's motivations in drafting the 2007 Profile and was not based upon personal knowledge. J.A. 6. Indeed, "the BIA's rejection of Dr. Sapio's critique has been discussed in at least nineteen appellate cases from six circuits . . . and not once has a court of appeals found the BIA's rejection of Dr. Sapio's report to constitute an abuse of discretion." Ni v. Holder, 715 F.3d 620, 625 (7th Cir. 2013). Here, as in Ni, the BIA acted within its discretion when it disregarded Dr. Sapio's report after considering Dr. Sapio's arguments and finding her critique of the 2007 Profile unpersuasive. See Ni, 715 F.3d at 625. Therefore, as has every other circuit to consider the Sapio Affidavit, we too find that the BIA did not err in finding it incredible. Accordingly, the BIA did not abuse its discretion in determining that Lin's evidence was not sufficient to discredit the findings in the 2007 Profile.

V.

For the foregoing reasons, Lin's petition for review is

DENIED.

28