**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1557**

IRENE O. ATSEYINKU,

      Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

      Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted: March 21, 2018                  Decided: April 26, 2018

Before WILKINSON, TRAXLER, Circuit Judges, and Leonie M. BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.

Petition denied by unpublished per curiam opinion.

Marco Pignone, III, GETSON & SCHATZ, P.C., Philadelphia, Pennsylvania, for Petitioner. Chad A. Readler, Acting Assistant Attorney General, Cindy S. Ferrier, Assistant Director, Joseph A. O'Connell, Civil Division, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

An Immigration Judge (IJ) ordered Irene O. Atseyinku removed to Nigeria on the ground that she had failed to maintain her status as a lawful permanent resident of the United States. After twice remanding the case back to the IJ, the Board of Immigration Appeals (BIA) eventually upheld the IJ's removal order. Atseyinku then filed motions to reconsider and to reopen the removal order, which the BIA denied. Atseyinku now argues on appeal that the BIA abused its discretion in denying those motions. For the reasons that follow, we deny the petition for review.

I

Atseyinku is a citizen of Nigeria who was admitted to the United States as a lawful permanent resident in October 2006. She returned to Nigeria sixteen days later and, after spending the majority of the next three years in her native country, tried to enter the United States as a lawful permanent resident on September 3, 2009. A passport security check indicated that she had spent a total of approximately two months in the United States since becoming a permanent resident in 2006. After being interviewed by a Customs and Border Patrol (CBP) officer, Atseyinku was issued a notice to appear in a removal proceeding. The notice charged that Atseyinku had abandoned her status as a lawful permanent resident and was thus removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), which states in relevant part that "any immigrant at the time of application for admission who is not in possession of" valid entry documents "is inadmissible."

On June 1, 2010, Atseyinku appeared before an IJ. The Department of Homeland Security (DHS) submitted evidence in support of removability, including documentary

2

evidence about Atseyinku's arrival and departure record. The information DHS provided showed that Atseyinku left the United States sixteen days after her initial entry in 2006; the information also showed that she returned to the United States on September 5, 2007 and stayed for another twenty-one days. In total, Atseyinku was physically present in the United States for sixteen days in 2006, twenty-five days in 2007, and twenty days in 2008.

On January 26, 2011, the IJ held a hearing on Atseyinku's removability. Atseyinku testified that she had returned to Nigeria for such long periods because her mother had been ill since 2005, and because she was trying to arrange for her daughter to live with her in the United States over the objections of the child's father. Atseyinku said that she eventually reached an agreement with the child's father, and that she had been living in Laurel, Maryland, since approximately January 2010. She said that she had been working as a retail associate at Macy's since November 2009, and as a teller at a local bank since July 2010. She also said that her daughter attended high school in the United States. In addition, she pointed out that she had filed federal and state tax returns since becoming a lawful permanent resident, obtained an American phone and credit cards, and given a friend money to buy her a car to use when she was in the country. Although she testified that that she had previously applied for jobs in the United States, she admitted that, prior to the initiation of removal proceedings, she had not worked in this country. She further admitted that, when she was detained by CBP in 2009, she said that she was in the United States on "holiday" and intended to return to Nigeria after eleven days.

On February 10, 2011, the IJ issued an oral decision. Because the child custody dispute did not "account[] for her remarkably short periods of time in the United States and dramatically long periods of time in Nigeria," the IJ concluded that Atseyinku had abandoned her permanent resident status and ordered her removed to Nigeria. *Id.*

Atseyinku sought review from the BIA, and the BIA remanded the case and directed the IJ to address five of Atseyinku's claims: (1) that her travels to Nigeria were primarily motivated by a desire to visit her ailing mother and to resolve a custody dispute; (2) that she purchased a car in the United States through a friend; (3) that she sought employment in the United States; (4) that she paid taxes in the United States and maintained an American bank account, credit card, and cell phone; and (5) that she was stressed and confused when she told border agents that she planned to return to Nigeria eleven days after her 2009 visit to the United States.

On February 14, 2013, the IJ issued a second decision. The IJ concluded again that Atseyinku had failed to maintain her permanent resident status because: (1) she had only been present in the United States for a total of 70 out of 1,066 days between initial entry and receiving a notice to appear in removal proceedings; (2) she had told the CBP Officer that she planned to return to Nigeria in eleven days to "take [her] daughter back to school in Nigeria," A.R. 569; (3) the title for Atseyinku's car showed that she purchased it on September 1, 2010, nearly a year after the initiation of removal proceedings; and (4) Atseyinku did not report any taxable income and her bank records were sparse, which did not suggest that she intended to retain her permanent resident status.

4

Atseyinku appealed, and on January 21, 2015, the BIA again remanded the case for further proceedings. Specifically, the BIA directed the IJ to consider additional evidence that Atseyinku was engaged in an active job search in the United States before the removal proceeding.

On April 21, 2015, the IJ issued a third and final decision. The IJ took note of an October 2006 email from a U.S. employer stating that it had received Atseyinku's résumé, but the IJ concluded that Atseyinku still failed to prove that she intended to remain a permanent resident in the United States. The IJ was also unconvinced by affidavits provided in support of Atseyinku's contention that the custody dispute was not resolved until September 2009. The IJ again ordered Atseyinku removed to Nigeria.

Atseyinku appealed a third time, and on October 25, 2016, the BIA upheld the IJ's determination that Atseyinku had abandoned her permanent resident status. The BIA largely agreed with the IJ's analysis and concluded, contrary to Atseyinku's arguments on appeal, that the IJ did not erroneously shift the burden of proof to Atseyinku; that the IJ properly accorded less evidentiary weight to affidavits from Atseyinku's mother and a close friend; and that an express adverse credibility determination was not warranted in order to conclude that Atseyinku had abandoned her permanent resident status. The BIA observed that "the Immigration Judge failed to consider an email exchange between [Atseyinku and a prospective employer] dated October 18, 2006," but concluded that the error was harmless in light of the totality of the evidence. A.R. 63.

On November 25, 2016, Atseyinku filed a motion to reconsider with the BIA. She argued that the IJ had failed to follow the BIA's January 21, 2015 remand instructions,

and that the IJ erred in concluding that DHS satisfied its burden of proving that she had abandoned her permanent resident status. On January 19, 2017, Atseyinku also filed a motion to reopen her removal proceedings with the BIA. She requested that her daughter, now an adult, be permitted to offer testimony regarding the custody dispute.

On March 31, 2017, the BIA denied both motions. As to Ateyinku's motion for reconsideration, the Board concluded that Atseyinku did not establish any error of fact or law in its previous decision, that the IJ's decision did not include a prejudicial error, and that both the IJ and the BIA applied the proper burden of proof.

The BIA also concluded that reopening was not warranted. The BIA was not persuaded that Atseyinku's daughter's age had prevented her from testifying in the Immigration Court and, in any event, this evidence would not "change the outcome of the proceedings." A.R. 3-4. This petition for review followed.

II

A.

We first consider whether the BIA erred by denying Atseyinku's motion to reconsider the BIA's removal order. We review BIA decisions denying motions to reconsider for abuse of discretion. *See I.N.S. v. Abudu*, 485 U.S. 94, 909 (1988). This Court may overturn a denial of a motion for reconsideration "only if the Board acted arbitrarily, irrationally, or contrary to law." *Mohammed v. Gonzales*, 400 F.3d 785, 791 (9th Cir. 2005).

A returning permanent resident alien is "an immigrant, lawfully admitted for permanent residence, who is returning [to the United States] from a temporary visit

abroad." 8 U.S.C. § 1101(a)(27)(A). If immigration authorities determine that the absence is not a temporary visit abroad, the alien will be deemed to have abandoned permanent resident status and will be denied admission to the United States. DHS has the burden to show by clear, unequivocal, and convincing evidence that the alien abandoned her lawful permanent resident status. *See Matter of Huang*, 19 I&N Dec. 749, 754 (BIA 1988).

In determining whether an alien abandoned her status as a permanent resident, the primary inquiry is whether the alien's trip abroad was "temporary." 8 U.S.C. § 1101(a)(27)(A). Courts and the BIA have held that a "temporary" visit is either: (1) for a "period relatively short, fixed by some early event," or (2) set to "terminate upon the occurrence of an event having a reasonable possibility of occurring within a relatively short period of time." *Chavez-Ramirez v. INS*, 792 F.2d 932, 937 (9th Cir. 1986). In the latter case, where a visit abroad "is contingent upon the occurrence of an event and is not fixed in time," courts will find that the visit is temporary "only if the alien has a continuous, uninterrupted intention to return to the United States during the entirety of [her] visit." *Chavez*, 792 F.2d at 937.

The BIA correctly concluded, based on the totality of circumstances, that Atseyinku abandoned her permanent resident status. She spent only 70 of 1,066 days in the United States during the relevant period. Two of her trips to Nigeria lasted nearly a year, and, when traveling to the United States, she always purchased round-trip tickets with a return trip to Nigeria. In addition, she submitted a sworn statement to a CBP Officer that she was traveling to the United States on holiday and planned to return to Nigeria eleven days later. There was, moreover, little evidence that Atseyinku sought

7

employment in the United States before her removal proceedings began.

The BIA properly upheld the IJ's removal order. Atseyinku now argues that the IJ's failure to make an explicit adverse credibility determination precluded him from concluding that she had abandoned her permanent resident status. But courts need not make an express adverse credibility determination to order removal, and Atseyinku's mere statement that she maintained an intent to return to the United States does not, by itself, render her absence a "temporary visit abroad." *Singh v. Reno*, 113 F.3d 1512, 1515 (9th Cir. 1997). Actions can be determinative, and Atseyinku's behavior evinced an intent to reside permanently in Nigeria—not in the United States.

Atseyinku also now argues that the Board abused its discretion in concluding that the record and testimony offered left no doubt as to her intentions to live in the United States. Atseyinku suggests that the "clear, unequivocal, and convincing evidence" standard requires the moving party to prove its case beyond "any doubt," Pet. Br. 21-22, essentially equating that standard to the criminal beyond-a-reasonable-doubt standard.

The Supreme Court has explained, however, that "clear and convincing" standards occupy an intermediate position between preponderance of the evidence and proof beyond a reasonable doubt. *See California ex rel. Cooper v. Mithcell Bros.' Santa Ana Theater*, 454 U.S. 90, 93 (1981). The phrase "clear, unequivocal, and convincing" "is simply one of the many articulations of the intermediate burden of proof, not a counterintuitive way to say 'beyond a reasonable doubt.'" *Mondaca-Vega v. Lynch* 808 F.3d 413, 420 (9th Cir. 2015). The IJ in this case applied precisely this intermediate standard, and the BIA thus correctly found that it "applied the correct burden of proof in

8

evaluating whether [Atseyinku] abandoned her lawful permanent residency." A.R. 50.

Finally, Atseyinku argues that the removal order should be reconsidered on account of the IJ's failure to consider a single email. Although the BIA found that the IJ erred in not considering an October 18, 2006 email exchange with a prospective employer, the Board found that the error was harmless. We agree. The record contains two email exchanges with a prospective employer, Ameriprise Financial Advisors. The first was dated October 14 and informed Atseyinku that the company had received her résumé. In the second email exchange, dated October 18, Atseyinku inquired about available positions and salaries, and the company provided that information.

The IJ concluded that the first email did not provide evidence that Atseyinku intended to remain a permanent resident because she made no other attempts to find employment in the United States before the initiation of removal proceedings in September 2009. The second email exchange was a brief follow-up to the first inquiry.

A reviewing court is "entitled to permit a decision to stand if the legal and factual infirmities 'clearly had no bearing on the . . . substance of the decision reached.'" *Tassi v. Holder*, 660 F.3d 710, 725 (4th Cir. 2011). The Court will generally remand where "it is likely that the IJ would have reached a different outcome if he had given due consideration to the independent evidence that he" did not consider. *Anim v. Mukasey*, 535 F.3d 243, 261 (4th Cir. 2008). The Board properly concluded that the IJ's failure to discuss the follow-up email, which simply asked for information about the position's salary, did not affect the outcome of the case. It is hard to see how this email provides any additional support for Atseyinku's claim that she did not abandon her status as a

9

lawful permanent resident. The IJ's error was therefore harmless.

B.

We next consider whether the BIA erred by denying Atseyinku's motion to reopen. As with motions for reconsideration, we review motions to reopen under the deferential abuse of discretion standard. *See I.N.S. v. Abudu*, 485 U.S. 94, 909 (1988). And here, the BIA did not abuse its discretion in determining that reopening was not warranted.

For a case to be reopened, the evidence supporting the motion to reopen must be previously unavailable such that it "could not have been discovered or presented at the previous hearing." 8 U.S.C. § 1229a(c)(7)(C)(ii). The BIA properly denied Atseyinku's motion to reopen because Atseyinku's newly submitted evidence was in fact previously available, and because she did not otherwise demonstrate that the new evidence would have changed the result in her case. The new evidence Atseyinku sought to admit was an affidavit filed by her nineteen year-old-daughter. The additional affidavit stated only that the custody dispute began in August 2008, and that it was not resolved until after her parents' families intervened. The BIA was "not persuaded that the respondent's daughter's age at the time of the hearing rendered her incapable of submitting a similar affidavit or testifying to the contents of the affidavit." A.R. 3. Atseyinku's conclusory statements that her daughter was too young to testify give us no reason to question this determination, much less to find that it was an abuse of discretion.

Even assuming Atseyinku's daughter was too young to testify in 2011, the BIA also correctly concluded that reopening was not warranted because her allegations would

10

likely not affect the outcome of the case. In a reopening, "[t]he petitioner carries a 'heavy burden' [in that] . . . she must show that 'the new evidence offered would likely change the result in the case.'" *Wanrong Lin v. Holder*, 771 F.3d 177, 183 (4th Cir. 2014). The claims in Atseyinku's daughter's affidavit were duplicative of affidavits filed by Atseyinku's mother and friend. Given these circumstances, the additional affidavit would not have changed the outcome of the case.

Atseyinku was admitted to the United States as a lawful permanent resident in 2006. Lawful permanent residents are able to live and work in the United States. Those privileges, however, come with certain obligations, one of which is to maintain an intention to actually live in the United States. Atseyinku spent a total of approximately two months in the United States in the three years following her initial entry. It is clear that she did not intend to maintain a permanent residency. The petition for review is accordingly

*DENIED*.