**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 21-2344**

───────────────

BEATRICE NWUCHENG ANAGHO,

              Petitioner,

    v.

MERRICK B. GARLAND, Attorney General,

              Respondent.

───────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────────

Argued:  January 24, 2023                         Decided:  May 16, 2023

───────────────

Before NIEMEYER and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────────

Petition denied by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Niemeyer concurred. Judge Floyd wrote a dissent.

───────────────

**ARGUED:**  Elsy Marleni Ramos Velasquez, CLARK HILL PLC, Washington, D.C., for Petitioner.  Sanya Sarich Kerksiek, UNITED STATES DEPARMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:**  Thomas K. Ragland, CLARK HILL PLC, Washington, D.C., for Petitioner.  Brian Boynton, Principal Deputy Assistant Attorney General, Jessica A. Dawgert, Senior Litigation Counsel, Elizabeth K. Ottman, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

Unpublished opinions are not binding precedent in this circuit.

USCA4 Appeal: 21-2344    Doc: 33       Filed: 05/16/2023    Pg: 2 of 15

QUATTLEBAUM, Circuit Judge:

Beatrice Nwucheng Anagho, a native and citizen of Cameroon, petitions for review of the Board of Immigration Appeals' order denying her motion to reopen her requests for asylum, withholding of removal and protection under the Convention Against Torture ("CAT"). The Board concluded that the new evidence she presented did not show materially changed country conditions that would affect her eligibility for relief and protection from removal. Because we find that the Board's decision was not arbitrary, capricious or contrary to law, we deny Anagho's petition for review.

## I.

Anagho arrived in the United States in 2003 on a B-2 visa.[1] Shortly after that, she applied for asylum and withholding of removal. The Department of Homeland Security issued Anagho a Notice to Appear, charging her as removable as a noncitizen who remained in the United States for longer than permitted. *See* 8 U.S.C. § 1227(a)(1)(B). Anagho, through counsel, conceded the charge of removability and submitted an updated application for asylum, withholding of removal and protection under CAT. Anagho claimed she had suffered past persecution and had a well-founded fear of future persecution from the Cameroonian government based on her activities with the Southern Cameroons

---

[1] B-2 visas are for nonimmigrants traveling to the United States temporarily for tourism. *See* 8 U.S.C. § 1101 (a)(15)(B).

3

National Council ("SCNC"). In 2008, an Immigration Judge ("IJ") issued an adverse credibility finding and denied Anagho's application. The Board affirmed in 2009.

In 2012, Anagho first moved to reopen her proceedings. That motion was denied. In 2019, Anagho again moved to reopen her proceedings based on changed country conditions in Cameroon. The Board's denial of that second motion is appealed here.

An alien generally may file one motion to reopen within ninety days of a final order of removal. 8 U.S.C. § 1229a(c)(7). By statute, if a motion to reopen is based on changed country conditions, the ninety-day time limit does not apply. *Id.* § 1229a(c)(7)(C)(ii). And by regulation, changed country conditions create an exception to limiting an alien to a single motion. 8 C.F.R. § 1003.2(c)(3)(ii). The Board often refers to this as the "changed country conditions exception" to the time and numerical limitations on motions to reopen, and we have previously recognized this exception. *Wanrong Lin v. Holder*, 771 F.3d 177, 182 (4th Cir. 2014).

As a second motion, filed years after the Board's initial determination, Anagho's motion to reopen was untimely and numerically barred in the absence of changed country conditions. And to satisfy the changed country conditions exception, she was required to establish that her evidence regarding changed country conditions "is material and was not available and could not have been discovered or presented at the previous proceeding." A.R. 3–4 (citing 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii)). Notably, "[t]he petitioner carries a 'heavy burden;' he or she must show that the 'new evidence offered would likely change the result in the case.'" *Wanrong Lin*, 771 F.3d at 183 (quoting *In re Coelho*, 20 I. & N. Dec. 464, 473 (BIA 1992)).

Anagho's motion to reopen based on changed country conditions in Cameroon stated that:

> [O]ver the past several years, what used to be a simmering but largely quiet tension between two peoples—the Francophone majority and the Anglophone minority—that occasionally flared into violence has become a massive conflict in which, in the words of the Washington Post, 'Hundreds have died, close to 500,000 have been displaced, and activists have been rounded up and jailed.' The country is on 'the brink of civil war.'

A.R. 15 (internal citations omitted).

As evidence of the changed country conditions, Anagho submitted 10 exhibits, including an expert report by Dr. Charlotte Walker-Said ("Walker-Said Report") and the U.S. Department of State's *Cameroon Country Reports on Human Rights Practices for 2018* ("2018 Human Rights Report"). Based on the developments in Cameroon, Anagho argued that she "has a well-founded fear[2] that Cameroonian authorities will persecute and torture her if she is removed to Cameroon because of her undisputed membership in the SCNC and her equally undisputed identity as an Anglophone." A.R. 15.

In analyzing Anagho's motion, the Board stated that "[t]o determine whether the evidence accompanying [Anagho's] motion demonstrates a material change in country conditions that would justify reopening, [it] compare[s] the evidence submitted with the motion with the country conditions that existed at the time of [Anagho's] last hearing in 2008." A.R. 4 (citing *Matter of S-Y-G-*, 24 I. & N. Dec. 247, 253 (B.I.A. 2007)). The Board

---

[2] An individual "may qualify as a refugee . . . [if] he or she has a well-founded fear of future persecution." 8 C.F.R. § 1208.13(b).

5

further stated that "incremental or incidental changes are insufficient to meet the changed country conditions exception." A.R. 4. (citing *Matter of S-Y-G-*, 24 I. & N. Dec. at 257).

Based on this framework, the Board found that Anagho failed to satisfy the changed country conditions exception. For purposes of her motion, the Board accepted as true that she "is an Anglophone and current member of the SCNC who has participated in protests in the United States." A.R. 4. It also noted that it does "not discount the extremely disturbing conditions in Cameroon." A.R. 4. However, it ultimately held that the current "extremely disturbing conditions" did not represent a material change from the conditions that existed to threaten Anagho's safety at the time of her 2008 hearing. A.R. 4.

In coming to this conclusion, the Board compared evidence from the Walker-Said Report and the 2018 Human Rights Report with evidence from the U.S. Department of State's *Cameroon Country Reports on Human Rights Practices for 2006* ("2006 Human Rights Report"), which Anagho submitted at her initial hearing. It noted information from these sources about increased persecution and violence against all Anglophones and particularly those involved in political protests.

However, in finding that the changes were not material, the Board explained that evidence showed that in 2006, "Cameroon's human rights record remained poor, and that the government continued to commit numerous human rights abuses." A.R. 5. Specifically, the 2006 Human Rights Report indicated that Cameroonian "authorities arbitrarily arrested and detained SCNC members and other Anglophone citizens advocating secession, local human rights monitors and activists, participants in unauthorized demonstrations, and other individuals perceived as government critics." A.R. 5. Additionally, the 2006 Human Rights

Report "indicated that the Cameroonian government restricted citizens' freedoms of speech, press, assembly, and association." A.R. 5. The Board also noted that the Walker-Said Report stated "that Anglophone citizens of Cameroon had been staging nonviolent protests and being harmed by the Cameroonian government as early as May 2007, and the Cameroonian authorities have long targeted Anglophone activists." A.R. 5.

With respect to Anagho's specific situation, the Board concluded that:

> [T]he proffered evidence does not reflect that the government or any other person or organization in Cameroon has exhibited or expressed an interest in the respondent. Her past encounters with authorities were discounted in the [IJ's] decision [due to the adverse credibility finding,] and therefore her current claim is based only on activities which have arisen since her departure from Cameroon. The respondent has not established that any threat to her safety in Cameroon has escalated since the time of her 2008 merits hearing such that reopening based on changed country conditions is warranted.

A.R. 5.

Anagho timely petitioned for us to review the Board's denial of her motion to reopen. We have jurisdiction to review the Board's decision pursuant to 8 U.S.C. § 1252.

II.

Our standard of review places a heavy burden on a petitioner who wishes us to overturn the denial of a motion to reopen based on changed country conditions. We review such denials for abuse of discretion. *Garcia Hernandez v. Garland*, 27 F.4th 263, 266 (4th Cir. 2022). As such, we grant a petition only if the Board's decision is "arbitrary, capricious, or contrary to law." *Id.* at 266. The Board's "denial of a motion to reopen is reviewed with extreme deference, given that motions to reopen are disfavored because

7

every delay works to the advantage of the deportable [non-citizen] who wishes merely to remain in the United States." *Sadhvani v. Holder,* 596 F.3d 180, 182 (4th Cir. 2009) (internal quotation marks omitted). "Even so . . . the BIA abuses its discretion when it fails to offer a reasoned explanation for its decision, distorts or disregards important aspects of the alien's claim." *Nken v. Holder*, 585 F.3d 818, 821 (4th Cir. 2009) (quoting *Hussain v. Gonzales*, 477 F.3d 153, 155 (4th Cir. 2007) (internal quotation marks omitted)).

## III.

Anagho argues that the Board abused its discretion because its decision "defies the reality on the ground in Cameroon." Pet.'s Op. Br. 6. She argues that the country conditions report and expert testimony she submitted show a "profound escalation in violence." *Id.* at 7. As evidence that the Board abused its discretion, Anagho cites a recent unpublished Board decision that granted a motion to reopen with a similar procedural history and was "filed by a Cameroonian respondent who alleged that country conditions had materially changed." *Id.* at 9.

In response, the Attorney General argues that the Board properly compared the evidence presented in Anagho's motion to reopen with the country conditions evidence she presented at the time of her first removal hearing and "provided a detailed, reasonable explanation as to why it did not find conditions were materially altered." Resp. Br. 11. According to the Attorney General, the evidence presented in Anagho's motion to reopen is "largely cumulative" of the original evidence: "similar abhorrent acts" to those described in the motion to reopen were regularly occurring in Cameroon at the time of Anagho's first

8

proceeding. *Id.* And with respect to Anagho's citation of the recent Board decision granting a motion to reopen under similar circumstances, the Attorney General highlights that unpublished decisions by the Board are not binding precedent and that the "Board is required to consider every case on its own merits based on the specific evidence submitted." Resp. Br. 26 (citing *Matter of Vazquez*, 25 I. & N. Dec. 817, 822 n.5 (B.I.A. 2012); *Matter of Gomez-Gomez*, 23 I. & N. Dec. 522, 525 (B.I.A. 2002)). The Attorney General also points out that in the case relied upon by Anagho, "the Board relied upon new evidence that the Cameroonian government was actively targeting the movant's family members 'to discourage [him] from continuing his anti-government political activities in the United States.'" Resp. Br. 26–27. In contrast, Anagho has presented no evidence that the government "exhibited or expressed any interest in" her. Resp. Br. 27 (citing A.R. 5).

Considering both parties' arguments and the record, we conclude the Board did not act in a manner that was arbitrary, capricious or contrary to law in finding that Anagho "has not established that any threat to her safety in Cameroon has escalated since the time of her 2008 merits hearing such that reopening based on changed country conditions is warranted." A.R. 5. While there is evidence from which the Board could have concluded the conditions have sufficiently changed, there was also evidence in the record indicating that Anagho failed to establish that country conditions in Cameroon "were materially different from those conditions at the time of [her] original removal proceedings." *See Wanrong Lin*, 771 F.3d at 185 (citing 8 C.F.R. § 1003.2(c)(3)(ii)). And when the BIA catalogues a petitioner's submissions, evaluates the evidence and explains why the evidence fails to meet the heavy burden, its decision "falls far short of arbitrariness." *Id.*

9

So, regardless of the determination we would have reached were we sitting in the Board's

shoes, under our standard of review, we must deny Anagho's petition.

*PETITION DENIED*

FLOYD, Senior Circuit Judge, dissenting:

The outcome here turns on whether the Board of Immigration Appeals (the "Board") abused its discretion by concluding that Petitioner Beatrice Anagho failed to present evidence of materially changed country conditions within Cameroon sufficient to justify reopening her immigration proceedings. My fine colleagues in the majority conclude that the Board "did not act in a manner that was arbitrary, capricious or contrary to law in finding that Anagho 'has not established that any threat to her safety in Cameroon has escalated since the time of her 2008 merits hearing such that reopening based on changed country conditions is warranted.'" Majority Op. 9 (quoting Administrative Record (A.R.) 5). But I cannot share that view.

The majority and I agree that the Cameroonian government had a poor human-rights record in 2008 and often perpetrated abuses—Anagho's evidence at her merits hearing illustrated as much. To be sure, the country-conditions evidence that she subsequently presented at the reopening stage in 2019 did not necessarily illustrate a change in kind. Instead of portraying novel categories of violent acts, it depicted profound exacerbation of existing violence. This change in the degree of violence in Cameroon is no less than staggering. The only rational conclusion that may be drawn from Anagho's reopening evidence is that country conditions today are materially different than they were in 2008. The Board's contrary conclusion, to my mind, defies commonsense and compels remand. Thus, I respectfully dissent.

11

I.

As the majority correctly conveys, we review the denial of a motion to reopen for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992); *Mosere v. Mukasey*, 552 F.3d 397, 400 (4th Cir. 2009); *see* 8 C.F.R. § 1003.2(a) (2022) (discussing reopening of a case before the Board). The Board abuses its discretion if the decision is "arbitrary, irrational, or contrary to law." *Wanrong Lin v. Holder*, 771 F.3d 177, 182 (4th Cir. 2014) (simplified). The Board's "denial of a motion to reopen is reviewed with extreme deference, given that motions to reopen are disfavored because every delay works to the advantage of the deportable [noncitizen] who wishes merely to remain in the United States." *Sadhvani v. Holder*, 596 F.3d 180, 182 (4th Cir. 2009) (simplified). But, even amidst this deferential standard, the Board unquestionably "abuses its discretion when it fails to offer a reasoned explanation for its decision, [or] distorts or disregards important aspects of [a noncitizen's] claim." *Nken v. Holder*, 585 F.3d 818, 821 (4th Cir. 2009) (simplified).

If a motion to reopen is based on changed country conditions, the noncitizen must show that current conditions are materially different from those that existed at the time of the original removal proceeding. *See Lin*, 771 F.3d at 185, 188. At least one of our sister circuits has denied relief when a noncitizen's evidence portrays no more than an "incremental change," rather than "a significant shift in country conditions from those that existed" previously. *Inestroza-Antonelli v. Barr*, 954 F.3d 813, 817 (5th Cir. 2020). The noncitizen thus "carries a heavy burden" and "must show that the new evidence offered"

12

is not only relevant but "would likely change the result in the case." *Lin*, 771 F.3d at 183 (simplified).

## II.

The previously unavailable evidence that Anagho presented at the reopening stage sufficiently portrays a material shift in country conditions from those that existed in 2008. Rather, the record at reopening is replete with evidence portraying just how dire the situation in Cameroon has become in the time since Anagho's merits hearing. The Board's contrary conclusion that conditions remained materially unchanged defies rationality, and thus constitutes an abuse of discretion.

I plainly acknowledge that the State Department's 2005 and 2006 reports—available at the time of Anagho's 2008 removal hearing—portrayed a situation in which the predominantly Francophone Cameroonian government persecuted Anglophone activists. But the Department's 2018 report starkly contrasts with the mere unrest and miscellaneous abuses described a decade earlier. Instead, the 2018 report states that "[t]he sociopolitical crisis that began in the Northwest and Southwest Regions in late 2016 over perceived marginalization developed into an armed conflict between government forces and separatist groups. The conflict resulted in serious human rights violations and abuses by government forces and Anglophone separatists." A.R. 198. The State Department's reports from 2005 and 2006 do not describe the same degree of violence between the competing groups, nor do they describe the situation as a crisis. Amnesty International also recognizes a crisis beginning in 2016 with the failure of various institutions within

13

Cameroon and the government's excessive use of deadly force against separatists. *See, e.g.*, A.R. 324–26.

In 2019, the Washington Post reported that over 500,000 people had been displaced by the conflict in the two years prior, and that Cameroon was on "the brink of civil war." A.R. 750. Similarly, Anagho's expert states that the number of Anglophone Cameroonians fleeing to Nigeria increased from 7,500 between October 2016 through 2017 to 35,000 in 2019. A.R. 168. The United Nations executed an Emergency Response Plan, endeavoring to provide shelter and other relief to displaced persons and refugees. A.R. 220. The only reasonable conclusion that we may draw from the fact of this exodus is that the very nature of the conflict fundamentally changed in the last decade—newly expanding victimization beyond the spheres of high-ranking activists to now include the greater populous of the Anglophone minority.

The government's contention that any change in conditions is immaterial and instead represents only a marginal deterioration of the situation in Cameroon is unpersuasive. To be sure, at the time of Anagho's initial merits hearing, the evidence that she presented conveyed tensions between the Southern Cameroon National Council (SCNC)—an Anglophone advocacy group—and the government. But mere tensions and the targeted persecution of particularly zealous Anglophone activists is simply incomparable to a quasi-civil war displacing hundreds of thousands of innocents. Thus, the totality of the evidence compels the finding of a material change in country conditions since Anagho's hearing in 2008.

14

Having met her burden of demonstrating materially changed conditions, Anagho "must [also] show that the new evidence offered" is not only relevant but "would likely change the result in [her] case." *Lin*, 771 F.3d at 183 (simplified). The Board found that Anagho did not credibly recount the details of her past encounters with the Cameroonian government or the extent of her involvement in the SCNC. But it is undisputed that Anagho is an Anglophone Cameroonian, and that she is a member of the SCNC—regardless of lesser or greater participation in the group.

Given that the situation in Cameroon has evolved into a crisis that impacts not only high-ranking SCNC members but also lesser members and even Anglophones generally, a changed result in Anagho's case is likely. Consequently, remand for consideration of Anagho's asylum eligibility in light of the current state of Cameroon seems the appropriate path forward. I respectfully dissent.